STATE EX REL. ELLAN, RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,271.)

(Submitted May 10, 1934. Decided June 4, 1934.)

[33 Pac. (2d) 526.]

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Relator, submitted a brief; *Mr. Acher* argued the cause orally.

*Messrs. Clift & Glover,* for Respondents, submitted a brief; *Mr. R. H. Glover* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On December 7, 1933, L. H. House and W. R. Comerford, copartners, commenced action against the relator, Nicholas Ellan, in the district court of Cascade county to recover the sum of $2,728, alleged to be due as rental on certain road construction machinery let by the plaintiffs to the defendant. On the same day Ellan accompanied House on an automobile trip from his home in Lewiston, Idaho, to Helena, Montana, arriving there at 7:30 P. M., and was served with summons and a copy of the complaint in the action, on the

morning of December 8. Thereafter Ellan appeared specially in the action for the sole purpose of moving, and did move, that the service be quashed, on the ground that he was enticed into the state for the purpose of service, by a promise of compromise and settlement of the controversy over the ownership of the machinery and the indebtedness asserted by each of the parties against the other. The motion was supported by Ellan's affidavit, to which House interposed a counter-affidavit, and, on the hearing of the motion, House contradicted certain of Ellan's statements orally. At the close of the hearing, the court, Honorable W. H. Meigs presiding, denied the motion to quash and granted Ellan twenty days within which to answer to the complaint.

Ellan filed herein his petition for a writ of prohibition restraining the court, Judge Meigs and George Harper, clerk of the court, from further proceeding in the action. The petition recites the history of the dealing between the relator and the firm of House & Comerford, sets out certified copies of all papers filed in the above cause, and the court's order denying the motion, but does not present a transcript of the evidence taken at the hearing. The showing made was by the court deemed sufficient for the purpose and an alternative writ was issued, returnable April 19, 1934, in which all proceedings in the action were stayed until the further order of this court. The respondents answered, admitting certain of the allegations of the petition and denying others; briefs were filed and oral argument presented, whereupon the matter was submitted for determination.

From the files and records it appears that in November, 1932, the state highway commission let a contract to Sam Orino, of Spokane, Washington, for the construction of a part of the Helena-Great Falls highway, for a portion of which Orino gave a subcontract to the firm of House & Comerford, of Lewiston, Idaho. Certain trucks and construction equipment, later used by the firm, was then in Ellan's machine-shop at Lewiston; whether it then belonged to Ellan and was leased to the firm, as Ellan contends, or belonged

to the firm and was merely placed with Ellan for repairs, as House asserts, is not material here. This property was, on the completion of the House & Comerford contract, returned to Ellan in Idaho, in October, 1933, and on November 9 Ellan filed with the highway commission a claim against the firm and Orino for $12,199 as rental thereon. House & Comerford denied liability and countered with a claim for $2,728 as rental due them from Ellan for the period from October 17, to December 1, 1933.

This brief statement accurately discloses the status of the controversy being waged between the parties at the time House and Ellan traveled together by car from Lewiston, Idaho, to Helena. There is no dispute but that the declared purpose of this trip was to seek a compromise by conference with Orino and officers of the highway commission, in order that the commission might settle the Orino and House & Comerford claims, which settlement the commission desired to close on December 8, according to House's representation to Ellan.

Ellan's affidavit on motion to quash the service is to the effect that House made false and fraudulent representations, under pretense of discussing a compromise, for the purpose of enticing him into the state in order to secure service upon him, which representations were that Comerford had assigned his interest to House and would not be in Montana; that the highway commission had given notice that the matter would be closed on December 8, and that Orino had written House, saying that he, Orino, would be in Helena on that date, and demanded that House and Ellan be present. He declares that, on finding Commerford in Helena, he asked House why Comerford should be there, and was told, ''You will find out tomorrow morning''; that on finding that Orino was not in Helena, he called the latter at his home in Spokane, and was told that he had not intended being in Helena and had not requested House and Ellan to be there. He further charges in his affidavit that House exhibited to him a ''pretended

copy" of a letter from Orino, when no such letter was written, as proved by his telephone conversation with Orino.

In his counter-affidavit House asserts that he was acting in good faith and in the belief that a compromise could be effected; that he had a letter from Orino, which he exhibited; and that he did not know that Orino would not be in Helena until he met an employee of Orino at Saltese, when he was informed that Orino was going to Spokane but would come to Helena if requested, and declares that Ellan heard the conversation; he further declares that he knew nothing of the commencement of the action until he reached Helena, and that it was only after he had endeavored to find Ellan on the night of the 7th and again on the morning of the 8th and had concluded that Ellan did not desire to talk compromise, that he and Comerford caused the service to be made. In his affidavit House does not deny that he had the conversation to which Ellan swears, nor does he attempt to explain why Comerford came to Helena.

On the hearing Comerford did not appear, nor did Orino, and no attempt was made to clear up the suspicious circumstances attendant upon the fact that Comerford, who was not supposed to be in Helena, was there, and Orino, who was to be there, was not, nor how it transpired that the papers were in Helena for service on Ellan, who had been a resident of Lewiston, Idaho, for thirteen years and who had never, so far as the record discloses, been in Helena nor had reason to be there, except for the representations made to him by the affiant.

It is first contended that prohibition does not lie where the court has jurisdiction of the subject matter, and jurisdiction of the person depends upon contested facts. In support of this contention the respondents cite 22 R. C. L. 12, and *State ex rel. Stagg* v. *District Court*, 76 Mont. 495, 248 Pac. 213, 214. The court determined the applicability of the writ for which relator prays before issuing the alternative writ. However, the text from Ruling Case Law is predicated principally on opinions in cases wherein the trial court had

proceeded to judgment and, therefore, the appellate court declared that the question should have been presented on appeal instead of resorting to the extraordinary remedy of prohibition. (See *In re Alix,* 166 U. S. 136, 17 Sup. Ct. 522, 41 L. Ed. 948; *Ex parte Oklahoma,* 220 U. S. 191, 31 Sup. Ct. 426, 55 L. Ed. 431; *Pennsylvania R. Co.* v. *Rogers,* 52 W. Va. 450, 44 S. E. 300, 62 L. R. A. 178.) The only case cited in support of the text and applicable to the case at bar is *Finley* v. *Moose,* 74 Ark. 217, 85 S. W. 238, 239, 109 Am. St. Rep. 74, where it is said that this rule applies "though the superior court should be of opinion that the questions of fact have been wrongly determined by the court below, and, if rightly determined, would have ousted the jurisdiction. * * * Prohibition is only granted when the usual and ordinary forms of remedy are insufficient."

This is not the law of this state. True, if a matter is properly before a trial court, neither the court nor judge can be prohibited from passing upon it; it is the plain duty of the court to do so, and it is within its jurisdiction to dispose of the matter "rightly or wrongly," and, after it has so disposed of the matter and entered judgment, resort should be had to an appeal from the judgment; but here the court has disposed of no matter within its jurisdiction, but has merely held that it has jurisdiction to proceed. "If * * * it appears from the record that the respondent court is without jurisdiction, and for that reason a valid judgment cannot be rendered under any conceivable circumstances, the writ applied for may issue, regardless of whether any other remedy is available." (*State ex rel. Stagg* v. *District Court,* supra, citing many cases.)

In the circumstances shown above, why should a nonresident be put to the inconvenience and expense of answering a complaint, preparing for trial, bringing his witnesses from a sister state and going through the form of, perhaps, a long drawn out trial, suffer judgment to be entered against him, and appeal to the supreme court, all for the purpose of having

the court declare that the whole proceeding was needless and without effect, as the trial court was without jurisdiction?

The only question which has been presented to the trial court is as to whether or not it has jurisdiction of the person of the defendant. Prohibition would not lie to prevent the court from determining that question, but its "wrongly" deciding that question does not vest it with jurisdiction to proceed to try the case on its merits, and, if it appears from the record that the trial court is without jurisdiction over the person of the defendant and relator, prohibition will lie to prevent the court from further proceeding in the action.

Whatever may be the rule elsewhere, if in the preliminary stages of litigation it is shown to this court that the trial court is without jurisdiction to proceed, this court will prevent the needless waste of the time and money of the court and litigants by the use of this special writ, as it has done heretofore. (See *State ex rel. Goldstein* v. *District Court,* 96 Mont. 475, 31 Pac. (2d) 311; *State ex rel. Thibodeau* v. *District Court,* 70 Mont. 202, 224 Pac. 866; *State ex rel. Horgan* v. *District Court,* 69 Mont. 167, 224 Pac. 239; *State ex rel. Coe* v. *District Court,* 73 Mont. 265, 235 Pac. 766.) In such cases the appellate court is not correcting error within jurisdiction, but is preventing the assumption of jurisdiction when it does not exist; prohibition lies for this purpose. (See 21 Cal. Jur. 594.)

It is asserted that in such a proceeding as this, the court is bound to accept the findings of the trial court and cannot consider the sufficiency of the evidence presented to it and on which it made its findings. Respectable authority is cited in support of this rule, but if the rule were adopted here, this court would relinquish its power to apply the salutary doctrine last announced because of a technical rule established by precedent and without sound foundation in reason.

Originally in England the writ was never governed by any narrow or technical rules, "but was resorted to as a convenient

mode of exercising a wholesome control over inferior tribunals.''
(*Quimbo Appo* v. *People*, 20 N. Y. 531.)

This court, while approving the doctrine that unless want
of jurisdiction appears ''on the face of the proceedings,''
prohibition will not lie, has said that ''cases may arise, how-
ever, where. evidence *aliunde* the record is admissible to show
no jurisdiction,'' and again, that, to find out whether the
necessity for the writ exists, ''it is not beyond the power
of the superior court to ascertain if any evidence was before
the inferior court upon which it assumed the power to act''
(*State ex rel. Boston etc. Min. Co.* v. *Second Judicial District
Court,* 22 Mont. 220, 56 Pac. 219, 224); and finally has de-
clared that in determining the question, ''this court may
examine, not only the pleadings but the evidence before the
lower court, in order to determine whether the lower court
is about to exceed its jurisdiction'' (*State ex rel. Wooten* v.
*District Court,* 57 Mont. 517, 189 Pac. 233, 234, 9 A. L. R.
1212). Of course, when the lower court has resolved a
question on which the evidence is conflicting, the finding will
not be disturbed, and where the record contains substantial
evidence supporting the court's ruling, it will be conclusive
upon this court. On the other hand, in such a case as this,
if the admissions of the respondents and the undisputed evi-
dence in the record disclose that the lower court is without
jurisdiction, the dictates of justice, fair dealing and common
sense compel the issuance of the writ.

However, it is asserted that, as the record discloses that oral
▆ testimony was received at the hearing and this evidence
is not before the court, we must presume that the oral testi-
mony supports the lower court's ruling and compels us to deny
the writ. Such would ordinarily be the case, but here the re-
spondents have kindly given us the purport of the oral evidence
conclusively establishing the fact that such evidence does not
detract from, or in any manner affect, the matters and things
on which Ellan and House were in accord. The answer alleges
that ''L. H. House in testifying in said hearing not only
reiterated the matters set forth in his affidavit and testified to

nothing inconsistent therewith, but said L. H. House additionally gave testimony contradictory of such allegations of said affidavit of said Nicholas Ellan as were inconsistent or contradictory to the allegations contained in said affidavit of said L. H. House.'' There is, therefore, no conflict in the evidence adduced orally and that supplied by Ellan's affidavit, except as to the truth or falsity of certain of the representations made by House to induce Ellan to come to Helena, and as to whether House was acting in good faith to secure a conference looking to a compromise, or used that argument merely as a pretense to bring Ellan within the jurisdiction of the court issuing the summons that service might be had upon him.

The fact that a transcript of the oral testimony is not before us does not bar us from considering the sufficiency of the evidence on which the court determined that it had jurisdiction, viewed from the standpoint of the trial court's implied findings.

It taxes our credulity to the utmost to credit the finding of good faith and honest purpose in bringing Ellan into the state on the showing that, of two partners living in Ellan's home town in a sister state, one came to this state for the purpose of commencing action against Ellan without the knowledge of his copartner, who, on the same day, induced Ellan to accompany him into this state for the purpose of discussing the controversy out of which the cause of action, if any exists, arose, and that this action was unknown to his copartner; that while the action was commenced in Great Falls, the copartner who commenced the action and caused the process to be served on Ellan happened to be in Helena when House and Ellan arrived. However, the long arm of coincidence reaches many amazing situations, and, as the trial court determined the conflict in the evidence on the subject of the good faith of House in favor of his version, we must accept it.

The general rule is that when a nonresident party to an ▮ action, or a witness, comes into the state for the sole purpose of attending a trial, he is immune from the service of process during his attendance and for a reasonable period thereafter to enable him to return to his home. (*Stewart* v.

*Ramsay,* 242 U. S. 128, 37 Sup. Ct. 44, 61 L. Ed. 192; *Page Co.* v. *Macdonald,* 261 U. S. 446, 43 Sup. Ct. 416, 67 L. Ed. 737; *State ex rel. Coe* v. *District Court,* supra.) According to the weight of authority, this rule applies to all proceedings which are in their nature judicial, whether taking place in court or not (50 C. J. 554, and cases cited), and to attendance upon the taking of depositions to be used in the trial of a cause (50 C. J. 555, and cases cited). The rule has been extended to include a party attending the examination of witnesses to be used on a trial of his case (*Plimpton* v. *Winslow,* (C. C.) 9 Fed. 365), and to such a one who comes into a foreign jurisdiction, at the request of his counsel, to be present during the argument on a demurrer (*Kinne* v. *Lant,* (C. C.) 68 Fed. 436).

The question before us is usually treated under the head of fraud and deceit in enticing a nonresident into the jurisdiction in order to secure service upon him, and it is said that the service should be set aside when the defendant is procured to come into the jurisdiction by pretense of settlement. (50 C. J. 488; *Olean St. Ry. Co.* v. *Fairmount Construction Co.,* 55 App. Div. 292, 67 N. Y. Supp. 165; *Higgins* v. *Dewey,* (City Ct.) 13 N. Y. Supp. 570; *Cavanagh* v. *Manhattan Transit Co.,* (C. C.) 133 Fed. 818, 819; Alderson on Judicial Writs and Process, sec. 126.)

We can conceive of no valid reason for the differentiation. The law favors the compromise and settlement of disputed claims (12 C. J. 336), and should protect a nonresident who comes into this state at the solicitation of his adversary for the purpose of attempting such a disposition of a controversy, to the same extent as when one comes here as a party to, or a witness in, a case in court. As was said in *Allen* v. *Wharton,* 59 Hun, 622, 13 N. Y. Supp. 38, 39, respecting a situation similar to that in the case at bar: "Good faith on the part of the plaintiff required that he should have permitted the defendant again to leave this city without making service of the summons when it became evident that no settlement would be effected through his agency. That was violated in

making the service which was made upon him. It was a breach of the confidence which had been inspired * * * and the settled practice requires that the service of the summons made, as this was made, should not be permitted to stand." While there, as here, the trial court found in favor of the plaintiff on conflicting testimony, the appellate court in applying the "enticement" rule said that at the time the plaintiff invited the defendant to come to the state for the purpose of discussing a compromise or settlement, there probably lurked in his mind the idea of suit, and service if settlement was not effected. This declaration detracts from the rule announced, and we think it unnecessary to find that the lower court's finding of good faith is not justified by the evidence, but that the general rule of immunity should apply.

Federal Judge Van Fleet, of California, in discussing the general rule, has said: "Originally it was asserted solely as the privilege of the court for the protection of its own jurisdiction, but later as that of the person concerned as well. (Bacon's Abr., tit. 'Privilege.') What the precise limits of the right were in its earlier history, or those to whom extended, it is not very material to here inquire. * * * While it is quite true that the right has most frequently arisen and been applied in connection with parties and witnesses in judicial proceedings, its extension in the process of time to those engaged in other departments of the public service has been more largely by analogous application by the courts than as a result of legislation." (*Filer* v. *McCornick*, (D. C.) 260 Fed. 309, 314.)

Quoting from *Stewart* v. *Ramsay*, supra, it is said: " 'Now, this great object in the administration of justice would in a variety of ways be obstructed if parties and witnesses were liable to be served with process while actually attending the court. It is often matter of great importance to the citizen to prevent the institution and prosecution of a suit in any court at a distance from his home and his means of defense; and the fear that a suit may be commenced there by summons will as effectually prevent his approach as if capias might be

served upon him. This is especially the case with citizens of neighboring states, to whom the power which the court possesses of compelling attendance cannot reach.' It is these considerations which have actuated the courts in extending the protection of the rule, so limited in the beginning, until it has come to embrace practically every one who may be called to a strange jurisdiction in connection with a cause, and every proceeding or step in the action, either heard before the court or any of its officers.''

A bona fide attempt to compromise and settle a controversy without the trouble and expense of the institution of suit and the trial of the cause is a more important step in connection with the cause than argument of a demurrer or the taking of a deposition for the preservation of testimony, and the general rule as to immunity should be extended to cases wherein, as here, a party to a controversy has been induced for this purpose to come within rifle range, as it were, under a flag of truce; if the purpose of the parley is not accomplished, honor and fair dealing should dictate that such person be permitted a reasonable time within which to return to the safety of the position from which he was induced to withdraw, before his adversary goes into action.

The district court was in error in refusing to quash the service of process in the case of *House & Comerford* v. *Ellan;* accordingly a peremptory writ will issue restraining further proceedings.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, STEWART and ANDERSON concur.