STATE EX REL. McVAY, RELATOR, *v.* DISTRICT COURT OF FOURTH JUDICIAL DISTRICT IN AND FOR MISSOULA COUNTY, ET AL., RESPONDENTS.

No. 9240.
Submitted November 22, 1952. Decided January 13, 1953.
251 Pac. (2d) 840.

Mr. Leon L. Bulen, Missoula, for relator.
Mr. John F. Patterson, Jr., Missoula for respondents.
Mr. Bulen and Mr. Patterson argued orally.

MR. CHIEF JUSTICE ADAIR:

On petition of the relator Daniel M. McVay, this court issued a writ directing the respondents, the district court of Missoula county and the Honorable C. E. Comer, as judge presiding, to certify to this court the record and proceedings had and done in district court cause No. 16959, then and now pending in the respondent court. The petition, the return made to the writ and the record filed in this court tend to show the below recited facts.

District court cause No. 16959 was commenced on October 14, 1947, by the plaintiff Daniel M. McVay, by the filing of a complaint against his wife, the defendant Katherine McVay, seeking a divorce and the custody of the two children of the marriage, being a son and a daughter, both infants of pre-school age.

The defendant filed an answer and cross complaint praying for dissolution of the marriage and custody of the children. The plaintiff filed a reply and, issue being joined, the cause was tried before the respondent court sitting wihout a jury. At three hearings held on October 28, 1947, January 23, 1948, and June 12, 1948, respectively, much testimony was introduced on behalf of both parties.

On July 24, 1948, the respondent judge made and filed somewhat voluminous and detailed findings of fact and conclusions of law, wherein, *inter alia,* he concluded: That no divorce should be decreed at that time; that the cause should be continued to November 24, 1948; that in the meantime the plaintiff should have the custody of both minor children one-half the time and the defendant should have such custody the remaining one-half of the time, alternating each week.

On July 28, 1948, the trial court amended its findings of fact and conclusions of law by adding thereto the provision: "That neither party hereto shall take either of said children outside of the State of Montana without the consent of the Court."

On November 24, 1948, the court continued the hearing on all issues in the cause to December 3, 1948, at which time further testimony on behalf of both parties was introduced and the cause was submitted for final decision.·

On December 18, 1948, the trial court made and filed supplemental findings of fact and conclusions of law, wherein, *inter alia,* it concluded: That the defendant is entitled to a decree of divorce from the plaintiff; that defendant is entitled to the custody of the minor children as provided for in the court's conclusions and that the defendant should be awarded counsel fees, court costs and support money.

*Decree of Divorce.* By decree entered January 7, 1949, the respondent court decreed that the defendant Katherine McVay be granted an absolute divorce from the plaintiff Daniel M. McVay and ordered and adjudged:

"That as to the custody of the children, issue of said marriage:

"(1) Until the older child commences to attend school, the

parents should each have custody of both children one-half of the time, alternating each week as hereinbefore provided in * * the Conclusions of Law heretofore adopted by the court;

"(2) After the older child commences attending school, the parents should have custody as follows:

"a. The mother, defendant, should have custody of both children during all of the school year except as hereinafter provided:

"b. The father, plaintiff should have custody during the vacation periods (from the 10th day of each month of June to the 25th day of the month of August) of each year, the Christmas holidays (from the 24th day of December at the hour of 12:00 o'clock noon to the 2nd day of January immediately following at the hour of 12:00 o'clock noon) and one day during the Easter vacation of each year;

"(3) That during the school year the father should have custody of said children every other week end from Saturday at 12:00 noon to the next day, Sunday, at 12:00 o'clock noon;

"(4) That during the vacation period (June 10th to August 25th of each year) the mother, defendant, should have custody every other week end from Saturday at 12:00 o'clock noon to the next day following, Sunday, at 12:00 o'clock noon;

"(5) That the plaintiff and the defendant should each have the right of reasonable visitation at reasonable times and places while the children are in the custody of the other.

"That the plaintiff shall pay to the defendant the amount of Seventy-five ($75.00) per month for rent and for support and maintenance of the defendant and said minor children, such payments to be made on the 1st day of each and every month.

"That during the vacation period when the children are in the custody of the father, after the oldest child commences to go to school, the monthly payments shall be reduced to Fifty Dollars ($50.00) per month.

"* * * that the plaintiff shall continue payments on the residence property, purchased jointly by the plaintiff and the

defendant, Forty-five Dollars ($45.00) per month and the taxes thereon; and that as the plaintiff and the defendant have each paid moneys upon and for the liquidation of the purchase price of said residence property, each is the equitable owner and joint owner thereof as provided by the provisions of Section 6680, R. C. M. 1935 [R. C. M. 1947, sec. 67-308], and in the event of the death of one, the survivor should become the owner in fee simple of all right, title and interest therein for the benefit of said children, issue of said marriage, and that both plaintiff and defendant should be enjoined from selling or disposing of any interest in said property or encumbering the title thereof. The plaintiff shall be allowed to have the use and occupancy of said residence on Edith Street until the further order of the Court."

On March 26, 1949, the defendant applied to the respondent court for an order allowing her to take the minor children with her to Salt Lake City, Utah, for a couple of weeks.

*Plaintiff's First Notice of Motion to Modify Decree.* On July 25, 1950, the plaintiff served and filed written notice that on a day certain plaintiff would move the court for an order to modify its decree of January 7, 1949, so as to transfer to plaintiff the full custody of the minor children but to allow defendant the right of visitation at specified times and places. The hearing so noticed was not had on the date set and on September 13, 1950, the trial court made an order setting the time for presenting and hearing plaintiff's proposed motion to modify the decree and also directing that both minor children be immediately delivered into the custody of the public welfare department of Missoula county and that "until the said hearing, neither the mother of said children nor the father of said children, nor the mother of the plaintiff, nor the father of the defendant be allowed to talk with or interview said children."

*Children Delivered to Public Welfare Department.* On the following day, September 14, 1950, plaintiff complied with the aforesaid order by delivering both children into the custody of the public welfare department of Missoula county, where

they remained and were kept for almost seven months.

*Custody Given to Defendant.* On April 10, 1951, the respondent court ordered that said public welfare department deliver the children into the custody of the defendant and further ordered that its decree of January 7, 1949, be modified to the extent that sole and absolute custody of the children be awarded to the defendant with right of reasonable visitation on the part of the plaintiff "at reasonable times and places, which the court at this time fixes at two hours each week, at the home of the defendant, unless plaintiff and defendant agree upon a different period of time."

*Plaintiff's Second Notice of Motion to Modify Decree.* On June 23, 1951, plaintiff served and filed in the trial court written notice that on Friday, July 6, 1951, plaintiff would make and present to the trial court a motion for an order to modify the court's order of April 10, 1951, to the extent and for the purposes set forth in plaintiff's supporting affidavit that day served upon defendant and filed in said cause in which affidavit plaintiff stated, *inter alia,* that it is for the welfare of the children physically, mentally, morally, and spiritually to award the custody of the children to the plaintiff, and to modify the decree by giving plaintiff such custody, with the right to defendant to visit the children at all reasonable times and to strike from the decree and the order modifying the decree certain quoted objectionable language and material, claimed to rest on insinuation, inferences, and innuendoes rather than upon any evidence submitted to the court.

The affidavit further stated that plaintiff has committed no act which justifies the court in depriving him of his children; that plaintiff has been able only once since September 1950, to see his children; that plaintiff was advised by defendant that plaintiff could not bring anyone with him to see the children; that plaintiff had made various unsuccessful attempts to see his children but had been denied admission to defendant's home where the children then were; that in an attempt to visit the children, plaintiff prevailed upon a neighbor to accompany

him to defendant's home whereupon defendant called the police and caused plaintiff's arrest as well as that of his companion and that following a police hearing the charge against plaintiff was dismissed.

*Disqualifying Affidavit No. 1.* On June 27, 1951, being eight days before the day theretofore noticed and set by plaintiff for the making and the hearing of his proposed motion to modify the decree as amended, the plaintiff filed in the respondent court an affidavit of disqualification against the Honorable C. E. Comer, district judge presiding, for imputed bias and prejudice.

*Defendant's Motion to Quash Plaintiff's Motion to Modify.* On June 25, 1951, being two days after plaintiff had served and filed written notice that on July 6th he would make a motion for an order to modify the decree as amended, the defendant served upon plaintiff's counsel and filed a written notice that on July 2, 1951, defendant would move the court for an order to quash plaintiff's motion to modify the decree of the court entered therein on the 10th day of April 1951, for the reasons set out in defendant's motion for said order to quash, a purported copy of defendant's proposed motion to quash being attached to the notice so served.

On July 2, 1951, at a hearing held in the respondent court, at which neither plaintiff nor his counsel was present, defendant's counsel orally made and argued defendant's motion to quash plaintiff's previously noticed motion to modify the decree as amended by the order of April 10, 1951, at the conclusion of which hearing the respondent court and judge made and filed a written order that the affidavit of disqualification so filed against the respondent judge be stricken from the record; that the motion of the plaintiff be in all things denied; that the motion of the defendant, Katherine McVay, be granted; and that plaintiff's application to modify the decree and prior orders of the trial court be denied.

*Plaintiff's Third Notice of Motion to Modify.* On August 30, 1951, plaintiff served upon defendant's counsel and filed

a notice that on Tuesday, September 4, 1951, he would present a motion for an order to modify the court's order of April 10, 1951, by striking certain designated portions of said order and by awarding to plaintiff the full custody of the children, the notice being accompanied by plaintiff's affidavit in support of his proposed motion and a copy of the intended motion.

*Disqualifying Affidavit No. 2.* On August 30, 1951, the plaintiff also filed a second affidavit of disqualification against the respondent district judge for imputed bias and prejudice.

*Defendant's Motion to Set Aside and Deny Plaintiff's Motion to Modify.* On September 4, 1951, being the date set for the making and hearing of plaintiff's proposed motion for an order to modify the decree as amended, the defendant filed a written motion for an order to set aside plaintiff's proposed motion to modify and to deny the plaintiff the relief therein sought urging the same grounds as had theretofore been urged in defendant's motion to quash of June 25, 1951.

At the hearing on September 4, 1951, the respondent district judge ruled that he had and has jurisdiction in the case and ordered plaintiff's affidavit of disqualification No. 2, so filed against him on August 30, 1951, stricken from the files, following which he made the following order:

"It is Now Hereby Ordered that Mr. Daniel M. McVay be and he hereby is allowed to visit his children at the home of his former wife, Mrs. Katherine McVay, every Saturday from the hour of 2 o'clock p. m. to the hour of 5 o'clock p. m. If it so happens, on account of his work with the Forest Service, that he is not able to visit his children on any particular Saturday, he may visit the children for a like period of time, namely three hours at some subsequent time, excluding however, school days, upon his notifying through his counsel, the counsel for Mrs. Katherine McVay, so proper date can be arranged and * * * that Mr. Daniel McVay shall be accompanied by the Sheriff or Sheriff's Deputy at all times during these visits; and * * * that Mr. Daniel M. McVay may take the children out for a ride in his automobile or the automobile of the Sheriff

for a period of one hour out of the said three hours, accompanied by the Sheriff or his Deputy; and * * * that during the visits of Mr. Daniel M. McVay at the home of Mrs. Katherine McVay, as Mr. McVay objects to his former wife being present, that Mrs. Katherine McVay shall absent herself from the room, leaving the children in the presence of Mr. Daniel M. McVay and the Deputy. The same order shall apply to the father of Mrs. Katherine McVay. In all other respects, however, the said motion of the plaintiff, Daniel M. McVay, to modify is denied.''

On December 31, 1951, the court ordered that the plaintiff may have custody of the two minor children ''from the hour of 3 :00 o'clock p. m. to 5 :00 o'clock p. m. tomorrow, Tuesday, January 1, 1952, said children to be at all times in the presence of the sheriff or his deputy.''

On August 6, 1952, the defendant filed in the respondent court a written motion for an order allowing her to take the two minor children out of the state of Montana and into the state of Washington leaving Missoula on August 26, 1952, and to return to Missoula on June 20, 1953.

*Order for Removal of Children to Washington.* On August 9, 1952, the court made an order allowing the defendant to remove the two minor children to the state of Washington, leaving Missoula on August 26, 1952, and to return not later than June 20, 1953, which order, *inter alia,* recites:

''It is further ordered that Daniel M. McVay may visit the said children at any reasonable time at the home of the defendant between now and the 26th day of August 1952; that said Daniel McVay is to be accompanied by the sheriff or sheriff's deputy at all times; and

''It is further ordered that if the defendant Daniel M. McVay has any objections to this order that he file them in writing in this court on or before ten o'clock a. m. on the 14th day of August 1952.''

On August 15, 1952, plaintiff filed a written motion to vacate and set aside, as void, the aforesaid court order of August 9th,

upon the grounds that such order was made upon the *ex parte* plaintiff served and filed a notice that on Friday, September application of defendant, without notice to and in the absence of the plaintiff and by a judge who had been duly disqualified and who was lacking in jurisdiction to make the order.

*Plaintiff's Fourth Motion to Modify.* On August 25, 1952, 5, 1952, he would present a motion to modify the court's order changing the provision of the decree governing the custody of the minor children so that such children will remain within the control and jurisdiction of the respondent district court and of the courts of Montana. On the same date plaintiff served and filed his affidavit in support of his proposed motion together with a copy of the intended motion.

*Disqualifying Affidavit No. 3.* Also on August 25, 1952, being eleven days before the date noticed for the making and hearing of plaintiff's proposed motion to modify the decree, plaintiff filed a third affidavit of disqualification against the respondent district judge, the Honorable C. E. Comer, for imputed bias and prejudice.

*Order for Children's Removal and Staying Proceedings.* On August 25, 1952, and following the filing of plaintiff's affidavit of disqualification against the respondent district judge, the latter, *inter alia*, ordered: That defendant should be allowed to take the said children with her to the state of Washington, but to return them to Missoula, Montana, at such time as the court may direct; that defendant furnish bond in the amount of $500 conditioned that she will return to Missoula with said children when ordered by the court; that all expenses of the defendant and said children in returning to Missoula pursuant to court order shall be paid by plaintiff and that further hearing and proceedings be continued pending a determination by the supreme court of the question of the legality of the disqualifying affidavits filed against the respondent district judge and the question of jurisdiction of the respondents in the cause.

No appeal was taken from the decree entered January 7, 1949, and, the time allowed by law therefor having long since

expired, the decree became and is final so far as concerns the dissolution of the marriage.

*Authority to Modify Decree.* However the provisions of the decree providing for the custody, care and education of the minor children of the marriage have not become final for the Codes expressly authorize the court, on a proper showing, to modify or vacate such provisions.

R. C. M. 1947, sec. 21-138, provides: "In an action for divorce the court or judge may, before or after judgment, give such direction for the custody, care, and education of the children of-the marriage as may seem necessary or proper, and may at any time vacate or modify the same."

The next to the last paragraph of the decree of January 7, 1949, reads: "It Is Further Ordered, that this court retains jurisdiction of this action, subject matter thereof, the parties and the custody of the children for the purpose of amending or changing the orders herein made if necessary in the interest and welfare of the said children, issue of said marriage. Neither of the parties shall remove said children from the State of Montana except on the order of the Court in writing."

The plaintiff's proposed motion for an order to modify the decree as amended so noticed for hearing for July 6, 1951, is a motion that is authorized by the provisions of R. C. M. 1947, sec. 21-138, supra, and is invited by the above quoted provisions of the last paragraph of the decree.

A motion is properly an application for an order, R. C. M. 1947, sec. 93-8401, made *viva voce* to a court or judge. Great Northern R. Co. v. Hatch, 98 Mont. 269, 275, 276, 38 Pac. (2d) 976; O'Hanion v. Great Northern R., 76 Mont. 128, 245 Pac. 518.

A motion is not made by merely filing an application in writing with the clerk of the district court, but the moving of the court or judge, *viva voce* to grant the order. Gahagan v. Gugler, 100 Mont. 599, 606, 52 Pac. (2d) 150; Great Northern R. Co. v. Hatch, supra; O'Hanion v. Great Northern R., supra.

A motion is not an action but simply an application for an

■ order and it is not subject to the general rules of pleading. Paramount Publix Corp. v. Boucher, 93 Mont. 340, 346, 19 Pac. (2d) 223.

While our Codes do not specify all the instances in which ■ notice of the time for making or presenting an intended motion must be given, the general rule is that a party interested in resisting the relief sought by a motion has a right to notice and an opportunity to be heard. Vande Veegaete v. Vande Veegaete, 79 Mont. 68, 72, 255 Pac. 348; Leonard v. Hoppins, 121 Mont. 275, 279, 191 Pac. (2d) 990. Compare Bascom v. Carpenter, 126 Mont. 129, 246 Pac. (2d) 223.

The requirement that timely notice be given of the making of the proposed motion is to afford opposing counsel the opportunity to be present and intelligently to oppose the motion when made.

No answer or other pleading to a motion is required. Nothing ■ is required of the opposing party but to overcome, if he can, by competent evidence or by the citation of authority, the case made by the moving party.

Since, ordinarily no question not open on the hearing of the ■ original or main motion, is presented for decision by a motion to quash, dismiss, deny or strike from the files or records the original motion or by a demurrer to such original motion, such a motion or demurrer is regarded as superfluous, frivolous, confusing and bad practice. 60 C. J. S., Motions and Orders, sec. 43, p. 42, notes 29-34.

The defendant's motion presented and heard July 2, 1951, ■ applying for an order to quash plaintiff's duly authorized and noticed motion to modify the decree was both irregular and improper practice. Each and every question attempted to be raised by defendant's motion to quash plaintiff's motion could and should have been presented on July 6, 1951, at the time set by plaintiff's written notice of June 23, 1951, for the making and hearing of plaintiff's original motion to modify the decree.

In our opinion the correct rule is that announced in Donovan

v. Donovan, 294 Mass. 94, 200 N. E. 884, 886, wherein the supreme court of Massachusetts said: "The several motions by the defendant to dismiss motions filed by the plaintiff were not necessary. Such motions are irregular in all cases where the questions in issue are open on the original motion. Every question in the case at bar could have been presented on the original motions. The requests for rulings need not be discussed one by one."

In the recent case of Kress v. Corey, 65 Nev. 1, 189 Pac. (2d) 352, 361, 362, the learned Mr. Justice Milton D. Badt, speaking for the supreme court of Nevada, aptly said: "This court has, on several occasions, condemned the practice of submitting a motion to dismiss a motion. With as much propriety, or perchance with greater propriety, could the original movent notice a motion to dismiss the motion to dismiss the motion. The very statement indicates the confusion that is bound to ensue. If there is a good reason why a motion should not be entertained by the court, such reason may be advanced as a ground in support of the denial of the motion. The confusion is not confined to the mere records of this court, but to the orderly presentation of oral argument to the court. If a litigant has a right to move to dismiss a motion, he would presumably have a right to open and close the argument on his motion to dismiss the motion, and such argument, followed in turn by the arguments on the motion proper, would seriously affect the orderly and dignified presentation of matters to this court." Compare Buehler v. Buehler, 38 Nev. 500, 151 Pac. 44; Orleans Hornsilver Min. Co. v. LeChamp D'Or French Gold Min. Co., 52 Nev. 85, 280 Pac. 887; Lamb v. Lamb, 55 Nev. 437, 38 Pac. (2d) 659; Hartford Min. Co. v. Home Lumber and Coal Co., 61 Nev. 1, 107 Pac. (2d) 128, 114 Pac. (2d) 1091; Afriat v. Afriat, 61 Nev. 321, 117 Pac. (2d) 84; Lux v. Lux, 66 Nev. 337, 210 Pac. (2d) 212.

In the early case of Wier v. Bradford, 1 Colo. 14, the defendant in an action for forcible entry and detainer filed in the district court a demurrer to the complaint. On motion of

the plaintiff the defendant's demurrer was stricken from the files. Thereupon defendant, upon leave granted, filed a motion to dismiss the action. The plaintiff countered by a motion for an order to strike from the files defendant's said motion to dismiss the action. The trial court granted plaintiff's motion, ordered that defendant's motion to dismiss be stricken, and rendered judgment for plaintiff and against the defendant. In reversing such judgment and remanding the cause, the supreme court of Colorado said: "We have no doubt but that the court below erred in striking from the files of this cause the paper called a demurrer and the motion to dismiss plaintiff's suit, under the circumstances which are manifest to us. There is no rule of practice which can tolerate such a proceeding on the part of a court. * * * The questions which the paper called a demurrer raised had never been decided by the court or acted on in this case. No matter how informally these questions may have been presented to the court, it, nevertheless, was the duty of the court to sustain or overrule the demurrer. So with the motion to dismiss plaintiff's action. After leave had been granted by the court to defendant to file his motion, it was then too late to object that the motion came too late, and it was the duty of the court to pass upon the merits of the motion, and not to strike it from the files. If this practice could be tolerated, it might lead to great abuses, and might become very convenient for any incompetent judge to hide his ignorance of the principles upon which he was called upon to act. No matter whether or no the demurrer was sustainable, that does not alter the case."

In German Savings Bank v. Cady, 114 Iowa 228, 86 N. W. 277, 278, the court said: "A motion to strike from the files another motion is wholly unnecessary, and not recognized by our practice. If the motion objected to is not a proper one, or is not filed within the time required by the statute, then the objection arises and may be considered in ruling on the motion itself. There is no occasion for the filing of another motion in order to raise the objection. The court, therefore, properly

396

overruled the motion to strike, and in doing so did not necessarily pass on the question as to whether the motion for a new trial was filed within the proper time."

In Markworth v. State Savings Bank, 212 Iowa 954, 237 N. W. 471, 476, it was held that a motion to strike from the files another motion is not proper practice.

In Bartol Petition, 67 Pa. Dist. & Co. R. 180, 182, the court said: "We submit that it is not good practice to demur or move to quash a rule or motion. This is wholly unnecessary surplusage. * * * At the hearing on the rule counsel for respondents is privileged to raise any question pertaining to the jurisdiction of the court either of the parties or of the subject matter and any consideration pertaining to the power of the court to act in the matter may then be raised. To pass upon these matters now, on a motion to quash the rule, would simply incumber the record and make for an illogical and unnecessary duplication."

In Wabash Ry. Co. v. City of Gary, 191 Ind. 394, 132 N. E. 737, 738, the court said: "A demurrer to a motion does not present any question for decision. * * * Neither does a motion to strike out a motion." (Citing authorities.)

In Berens v. Berens, D. C. D. C., 30 F. Supp. 869, the court held that a motion to dismiss a motion is unnecessary pleading which ought not to be encouraged.

In the majority opinion of this court in Helena Adjustment ██ Co. v. Predivich, 98 Mont. 162 at page 168, 37 Pac. (2d) 651 at page 654, appears the purely gratuitous observation that "The proper practice in the case of an unauthorized motion is to strike it from the files." This court expressly disapproves, rejects and overrules the quoted sentence as being entirely unnecessary to the determination of any question or issue properly presented on the appeal and therefore *obiter dictum*. In that case the plaintiff, Helena Adjustment Co., a collection agency, operating in Lewis and Clark county, commenced suit in the district court of that county against the defendants Gabriel Predivich and John Evinich. The contract sued upon was made

and entered into in Silver Bow county, wherein, at the commencement of the action, both defendants resided. By timely and proper motion the defendants applied to the district court for an order changing the place of trial. This motion was duly *authorized* by the provisions of sections 9096, 9097 and subd. 1 of section 9098, R. C. M. 1921, now R. C. M. 1947, sections 93-2904, 93-2905 and subd. 1 of section 93-2906. The plaintiff countered by serving and filing a counter affidavit in opposition to defendants' motion for change of venue and affidavit of merits. At the same time plaintiff also served and filed a notice for the hearing of a motion to strike from the files defendants' proposed motion for change of venue as well as defendants' affidavit of merits and demand that the trial be had in the proper county. All objections, questions, issues and matters so urged by plaintiff could and should have been presented, heard and determined at the hearing of defendants' motion for change of venue and thus on the one hearing all pertinent matters could have been disposed of. However, on December 27, 1933, the district court held a hearing on plaintiff's motion to strike from the files defendants' duly noticed and authorized motion for a change of venue following which hearing the court made an order denying plaintiff's said motion. Undaunted by such adverse ruling, plaintiff's persistent counsel on January 26, 1934, resubmitted in the same court, to the same indulgent and patient district judge, plaintiff's same motion to strike from the files and, following such second hearing, the court made a second order denying plaintiff's motion. Needless to say, such unnecessary, confusing and harassing procedure should not twice be indulged by the same judge, Coombs v. Hibberd, 43 Cal. 452; Thompson v. Lynch, 43 Cal. 482, and, by express statute was plaintiff prohibited from making a subsequent application for the same order ''to any other judge, except of a higher court'' sec. 8877, R. C. M. 1921, now R. C. M. 1947, sec. 93-1101, the violation of such prohibitory provisions being punishable as a contempt under

398

the provisions of section 8878, R. C. M. 1921, now R. C. M. 1947, section 93-1102.

R. C. M. 1947, section 93-1101 is the same as former section 182 of the Code of Civil Procedure of California which section of the California Codes was repealed in 1933 and a new law enacted, as appears in section 1008 of the Code of Civil Procedure of California of 1949. There was and is no appeal from the orders denying plaintiff's motion to strike from the files defendants' motion for a change of venue, hence nothing other than delay, confusion and harassment resulted from the two separate hearings and the two separate denials of plaintiff's motion to strike. On January 30, 1934, a third hearing was had, following which the district court made an order granting defendants' motion and ordering a change of venue. From such order the plaintiff appealed, assigning but two specifications of error, namely, (1) the granting of defendants' motion for a change of venue and (2) the denial of plaintiff's motion to strike the papers filed on defendants' application for change of venue. In affirming the order granting change of place of trial the majority opinion held that, ''the district court correctly denied the motion to strike and properly granted the order changing the place of trial.'' Thus plaintiff's motion to strike from the files was twice found lacking in merit and twice ordered denied by the district court, of which action this court approved. On the other hand defendants' proper and duly authorized motion for change of venue was found to be meritorious and to entitle defendants to the relief sought. The appeal did not involve or call for a determination of the ''proper practice in the case of an unauthorized motion'' for the plaintiff's challenge and its motion to strike from the files was directed against defendants' timely motion duly authorized by the express provisions of sections 9096, 9097 and subd. 1 of 9098, R. C. M. 1921. The filing of plaintiff's motion to strike was improper and bad practice. The majority opinion reached the correct result in affirming the order changing the place of trial, but proper practice required but one hearing at which

defendants would be heard in support of their motion for change of venue and plaintiff would be heard in opposition thereto thus obviating the confusing procedure which allowed plaintiff "to make three bites of a cherry."

In the instant case, the defendant's wholly unnecessary and superfluous motion for an order to quash plaintiff's duly authorized motion to modify the decree which defendant noticed for hearing for July 2, 1951, had no effect whatever on plaintiff's first affidavit of disqualification filed against the respondent district judge on June 27, 1951, and more than five days prior to the time set for the presentation and hearing of plaintiff's motion to modify the decree. The affidavit was both timely and proper. State ex rel. Sullivan v. District Court, 122 Mont. 1, 196 Pac. (2d) 452; McLeod v. McLeod, 126 Mont. 32, 243 Pac. (2d) 321.

The mere filing of such affidavit *ipso factor* worked the disqualification of the respondent district judge against whom it was directed. In re Woodside-Florence Irr. Dist., 121 Mont. 346, 194 Pac. (2d) 241; McLeod v. McLeod, supra. Accordingly, and, except as is expressly provided in and allowed by the provisions of subdivision 4 of section 93-901, R. C. M. 1947, all orders in this cause made by the said respondent district judge subsequent to the filing on June 27, 1951, of the first affidavit of disqualification against said judge are set aside, vacated and held for naught as null and void for want of jurisdiction. The respondent judge is directed to call in Judge Besancon to preside in the proceeding and it is further directed that the disqualified respondent judge must not act further in the action, motion or proceeding except as is expressly provided for in and allowed by the provisions of R. C. M. 1947, subdivision 4 of section 93-901. The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

ASSOCIATE JUSTICES METCALF, BOTTOMLY, FREEBOURN and ANGSTMAN, concur.