STATE OF MONTANA, ex rel. MONTANA STATE UNIVERSITY, et al., Relators, v. D I S T R I C T COURT, FOURTH JUDICIAL DISTRICT, and The Hon. C. E. Comer, Presiding Judge Thereof, Respondents.

No. 9850.

Submitted September 9, 1957. Decided October 31, 1957.

317 Pac. (2d) 309.

Mr. Forrest H. Anderson, Atty. Gen., Mr. William F. Crowley, Asst. Atty. Gen., for relators.

Mr. Leon L. Bulen, Missoula, for respondent.

Mr. Crowley and Mr. Bulen argued orally.

MR. JUSTICE CASTLES:

Upon petition of the relators, this court issued an alternative writ of prohibition returnable on September 9, 1957, at 2:00 p. m. Upon the return day the respondent district court and its judge, the Honorable C. E. Comer, filed its response to the alternative writ of prohibition and through counsel filed a motion to quash the alternative writ of prohibition.

The petition of relators complained that the respondent judge, the Honorable C. E. Comer, proceeded to hear and decide certain motions in an action in the respondent court, after he had been disqualified for imputed bias and prejudice.

An action had been instituted by Edna Virginia Bulen, Plaintiff v. The City of Missoula, Montana, a municipal corporation, and the commissioners thereof, Defendants, the object and purpose of which was to vacate and set aside a municipal ordinance enacted July 8, 1957, which closed a portion of a city street located in the City of Missoula, and which passes through the campus of Montana State University. The action also had as its object the restraining and enjoining of carrying into effect the ordinance and by subsequent motion to enjoin "all other persons trespassing, or who may be damaging or injuring, from in any way disturbing the present condition of said public highway, excepting proper use of such street by persons for normal traffic." This latter object obviously, as will appear hereinafter, included the relators herein.

The plaintiff Bulen filed an affidavit of disqualification against the Honorable William F. Shallenberger, the district judge, before whom the case was filed. The Honorable C. E. Comer was called in to hear the matter. Judge Comer issued a show cause order which was returnable on August 21, 1957. The attorney for the defendant City filed a motion to strike, which was argued and overruled on the date set for the show cause hearing. At the hearing, the plaintiff Bulen filed a motion for the issuance of a restraining order which the court took under advisement. During the course of the hearing, it was called to the attention of the respondent court, that under the provisions of R.C.M. 1947, section 93-2828, interveners in a previous action, namely Montana State University, Carl McFarland, as its president, and the local executive board could and should be joined as parties defendants in this suit. After some discussion concerning this matter, a motion was made by the attorney for the defendant City of Missoula for the joinder of the relators herein as parties defendants. Over objection of the plaintiff, the respondent court then directed that Montana State University, Carl McFarland as its president, and the local executive board thereof, be made parties defendants.

Thereafter Mr. Boone, attorney for the relators herein, who

appeared in the respondent court, moved the respondent court that Montana State University and the other relators herein have an opportunity to be heard before any court order was made and further requested that the plaintiff serve him with all instruments previously filed in the cause.

That same day, Carl McFarland as president of Montana State University and Theodore Jacobs, Alex Stepanzoff, and Olive Mulroney, as the members of the local executive board filed an affidavit disqualifying Judge Comer on the grounds of imputed bias and prejudice.

Thereafter, on August 22, 1956, the plaintiff Bulen filed motions to strike the newly joined parties defendants to the suit and to void the affidavit of disqualification, and also requested the court to issue the temporary restraining order against the defendant City of Missoula and all other persons. After hearing before the court, the motions of plaintiff were granted, and the respondent court herein revoked his previous order, ordering the joinder of the Montana State University and the other relators herein as parties defendants and struck from the record the affidavit of disqualification filed therein, and issued a restraining order against the defendant City of Missoula, and all other persons.

The relators herein then filed their petition for an alternative writ of prohibition as previously stated. As appears from the petition of the relators and the response of the respondent judge in this cause, it may be helpful to recite some of the history of the litigation between the same parties concerning the same issues before the same judge. Some two years ago, on August 1, 1955, the same Edna Virginia Bulen filed a complaint and petition in which the City of Missoula and the commission thereof were made defendants. The petition contained allegations that the defendant had advertised that it was about to close Maurice Avenue, between Keith and Connell Avenues in the City of Missoula without showing public necessity and to the great and irreparable damage to the plaintiff as a property owner. On August 15, that same year, the city attorney filed a

motion to strike, which was overruled on March 30, 1956. On August 4, 1956, a restraining order was issued against the defendant city and all other persons from vacating, closing, or in any other manner passing or enacting any resolution which would close, vacate, or interfere with the existing status of Maurice Avenue as it was then available for the use of the public. On August 23, 1956, the defendant City of Missoula filed its answer. On September 13, 1956, Montana State University, Carl McFarland, its president thereof, and its local executive board thereof, the same executive board who are relators in the instant litigation, filed a petition for leave to intervene in the cause and to be joined as parties defendants. The court issued an order granting leave to intervene and file a complaint in intervention, including an answer to the petition and complaint of the plaintiff Bulen. Thereafter upon petition duly made by the defendants the court entered a temporary order on October 6, 1956, modifying the restraining order previously issued, so as to permit the barricading of Maurice Avenue during the pendency of the action. Plaintiff Bulen filed a motion to strike the petition in intervention defendants filed a memorandum in defense, thereof, and the plaintiff Bulen on February 7, 1957, secured an order permitting additional time in which to file a brief in opposition. The opposition brief was filed and on February 18, 1957, the court issued an order denying the plaintiff's motion to strike. In that order the court stated:

"Herein, in the petition, it is alleged that the Montana State University has an interest in this litigation, and that the university is the owner of lands involved. In paragraph two of the said petition the allegation is, in effect, that the Montana State University owns lands on both sides of the avenue, Maurice Avenue, between Keith and Connell Avenues, and only university buildings used for the housing and instruction of students are thereon situate. It is apparent, therefore, that the Montana State University has an interest in this litigation, and under the provisions of said Sec. 75-408, and other sections cited, that

the said president and said board has the immediate direction, management and control of the institution. The opinion of the court [the respondent court and the same judge] is that the said president and said board have the legal right to intervene herein.''

The plaintiff's answer to the complaint in intervention was filed March 1, 1957, the cause set for trial on March 21, 1957, and the trial continued with adjournments from time to time until March 29, 1957.

On April 6, 1957, the court made findings of fact and conclusions of law. Among the findings of fact were the following:

''That the evidence discloses that the plaintiff, Edna Virginia Bulen, and others, will suffer inconvenience if said avenue is closed and vacated as contemplated in and by said Notice of Intention; and the evidence also discloses that benefits will be derived if said avenue is closed and vacated to the citizens and taxpayers of the City of Missoula and said Montana State University, and the State of Montana generally.''

Among the conclusions of law were the following:

''That the Commission of the City of Missoula did in all things comply with the laws of the State of Montana in the passage of Resolution No. 1750 and the giving and publication of notice thereof setting a time and place when and where objection to the vacating of Maurice Avenue would be heard.

''That the said City of Missoula, through and by its Commissioners, had and has plenary jurisdiction in proper cases to vacate, close or open streets and avenues in the said City of Missoula unless there appears to be an abuse of discretion on the part of the said Commission.

''That no abuse of discretion on the part of the said commission is shown by the evidence herein on the part of said City Commissioners.

''That the issue of closing and vacating said Maurice Avenue as to that portion thereof between its intersection with Keith Avenue on the south and Connell Avenue on the north is solely a question of fact for the determination and decision of the said

Commission, and not a question for the Court to determine herein."

On July 8, 1957, the City of Missoula through its mayor and commission enacted an ordinance vacating that portion of Maurice Avenue between Keith and Connell Avenues in the City of Missoula. In the usual course, that action became effective thirty days later on August 7, 1957. No appeal was perfected by the plaintiff Bulen from the court's decision previously made.

The relators herein contend that upon the filing of the affidavit of disqualification against him, Judge Comer lost jurisdiction to do anything more than ministerial acts specified in the statutes. They contend that his actions, first in striking Montana State University, its president and local executive board as parties to the second action, second in voiding their disqualifying affidavit and third in granting a temporary restraining order against the remaining defendants and all others, were unlawful, beyond and in excess of his jurisdiction.

The respondents' motion to quash would seem to be based on these grounds: (1) That the relators are not proper parties defendants and therefore not proper parties to file affidavits of disqualification; (2) That the affidavit of disqualification was filed too late, in that it was filed only after and subsequently to the submission of the plaintiff's motion for injunction *pendente lite*.

As to the first ground of motion by the respondent court to quash the alternative writ of prohibition, this court will not now hear a respondent district court challenge the legal right and capacity of the relators to appear by an affidavit of disqualification. This same court had granted leave to intervene in the previous case as set out in the recitation heretofore; and, in fact, *ordered them in as parties defendants in this action.* We will not now hear him say that they are not qualified to appear so far as this proceeding is concerned.

Montana State University is an instrumentality of the State of Montana created under the Constitution thereof (article XI,

section 11) by the Legislative Assembly (R.C.M. 1947, section 75-501). "The general control and supervision" of the University is vested in the state board of education. (Article XI, section 11). There is an additional separate executive board for "immediate direction and control." (R.C.M. 1947, sections 75-302, 75-307). Such Board meets at least monthly and its minutes of action are filed with the state board of education. By regulation of the state board of education, the executive board is directed to inspect the University periodically "especially for the purposes of appraising the conditions and needs of the physical plant, campus grounds, educational facilities, and student living conditions." (Regulations, December 13, 1954, paragraph III). R.C.M. 1947, section 75-502, provides that the president of Montana State University is "the executive head of the institution" and is expressly authorized "to give general direction to the * * * practical affairs * * * of the several colleges" comprising it, which duties relate to both "the proper government, and education work of the institution * * *."

The petition of the relators states that: "The State Board of Education has been fully apprised of all the things and actions stated herein. On June 17, 1957, that Board spent the whole day on the campus transacting business, inspecting the plant and grounds, and viewing the then barricaded portions of Maurice Avenue between Keith and Connell Avenues. The Attorney General of Montana, both by virtue of that office as well as in his capacity as ex-officio member of the State Board of Education, has been consulted respecting each litigation hereinafter described and has approved the intervention and representation of the University therein."

The main campus of the University lies at the foot of the west slope of Mt. Sentinel at the edge of the City of Missoula. The buildings thereon are concentrated in order to make it possible for students to go from building to building between classes and to make it economical to provide heat from a central plant and other utilities without unduly extended mains and conduits.

Steady growth has required new buildings yearly. After years of discussion, investigations, and surveys the executive board in 1954 reduced to writing and a map, its matured campus plan. The closure of Maurice Avenue by the city with the resultant loss of public character as a street (R.C.M. 1947, section 11-3310) was in furtherance of this plan. After the closure of Maurice Avenue, the University being the only property owner along that portion, proceeded to remove the rubble and in other ways erase it as a street. It could only have been the University and its employees to whom any injunction proceeding could be effective.

The foregoing recitation is sufficient to demonstrate that for the objects of the suit filed before the respondent court, the State of Montana, its board of education and the executive officers of the University are proper and necessary parties to the action. We are not to be understood herein as holding whether or not Montana State University as such is a legal entity. However, its executive officers, under the facts alleged, are proper and necessary parties. Neither are we to be understood as approving the informality and manner of the joinder of the relators as parties. However, once ordered joined, the relators had every statutory right to appear by affidavit of disqualification.

No question is raised by the respondent court as to whether or not the writ of prohibition is the proper remedy to stay proceedings where a district judge has been disqualified for bias and prejudice. Therefore we will not discuss this matter. See R.C.M. 1947, sections 93-9201, 93-9202; State ex rel. Miller v. District Court, 130 Mont. 65, 294 Pac. (2d) 903; State ex rel. Ellan v. District Court, 97 Mont. 160, 33 Pac. (2d) 526; 93 A.L.R. 865; State ex rel. King v. District Court, 107 Mont. 476, 86 Pac. (2d) 755; State ex rel. Stagg v. District Court, 76 Mont. 495, 248 Pac. 213; State ex rel. McLeod v. District Court, 67 Mont. 164, 215 Pac. 240.

We are not herewith concerned with any of the merits of the litigation in the district court. The sole question for considera-

tion is whether or not the affidavit of disqualification was filed as required by statute and what the effect of that affidavit of disqualification was.

R.C.M. 1947, section 93-901, subd. 4, in part, provides: "Such affidavit [affidavit of disqualification for bias and prejudice] * * * shall be filed with the clerk of the district court in which the same may be pending at least five days before the day appointed or fixed for the hearing or trial of any such action, motion, or proceeding (providing such party shall have had notice of the hearing of such action, motion, or proceeding for at least the period of five days *and in case he shall not have had notice for such length of time, he shall file such affidavit immediately upon receiving such notice.*" Emphasis supplied.

Relators in the application for a writ of prohibition, were not joined as parties defendants in the original proceeding, therefore were not served with notice of the date and place of the hearing. They were joined as parties defendants by order of the court at the hearing; and immediately, on the same day within a matter of three or four hours, filed the affidavit of disqualification as required by the statutory language set forth above.

That this filing was immediate does not seem to need explanation. But see State ex rel. Carroll v. District Court, 50 Mont. 506, 148 Pac. 312; Brindjonc v. Brindjonc, 96 Mont. 481, 31 Pac. (2d) 725.

From the response of the respondent district judge filed in this proceeding, it appears that following the order of the court, joining the relators as parties defendants, the attorney for the relators requested the *opportunity to be heard* on the motion then pending, that is, the motion for an injunction *pendente lite.* As expressed by the court, it was as follows:

"Mr. Boone. Yes, your Honor. Before any order is made by this court that affect our rights, we want an opportunity to be heard.

"The court withheld ruling on the motion for the injunction *pendente lite.* It was the opinion of the court that Mr. Boone

simply wanted time to be heard on the motion for temporary injunction.''

It immediately appears from the above-quoted portion of the return of the respondent court, that *he did not in fact* have the matter of the motion under advisement at that time, but intended to hear further matters on the motion. It does not impress this court that the respondent judge now states that he was only rendering a ''courtesy'' and not rendering an opportunity to be heard by the relators.

Upon the filing of the affidavit of disqualification the judge against whom it was directed was without authority to act further in the proceedings. R.C.M. 1947, section 93-901. Recent pronouncements by this court of the law applicable to affidavits of disqualification were made in the case of In re Woodside-Florence Irr. Dist., 121 Mont. 346, 194 Pac. (2d) 241, and in State ex rel. McVay v. District Court, 126 Mont. 382, 251 Pac. (2d) 840. We do not feel it necessary to discuss the law applicable than to refer to these two cases.

There is some authority for the proposition that the filing of an affidavit of disqualification for bias and prejudice will not interrupt the hearing on a motion already made or taken under advisement after argument. State ex rel. Nissler v. Donlan, 32 Mont. 256, 80 Pac. 244; State ex rel. Grice v. District Court, 37 Mont. 590, 97 Pac. 1032; State ex rel. Gold Creek Mining Co. v. District Court, 99 Mont. 33, 43 Pac. (2d) 249. However, these cases are to be distinguished from the situation here in that the affidavit had been filed by original parties to the cause and an opportunity had been afforded to them to be heard in defense of the motion. At the time of being joined as parties defendants in the instant case by court order, counsel for relators herein requested an opportunity to be heard before a motion for a temporary restraining order was submitted to the court. This request was apparently granted at the time, but subsequently the request was refused. Relators have not had the opportunity to be heard on any matter in issue in this cause. As pointed out in State ex rel. McVay v. District Court, supra, 126 Mont.

at page 393, 251 Pac. (2d) at page 846, "the general rule is that a party interested in resisting the relief sought by a motion has a right to notice and an opportunity to be heard. [Citing Montana cases].

"The requirement that timely notice be given of the making of the proposed motion is to afford opposing counsel the opportunity to be present and intelligently to oppose the motion when made."

Thus, in the instant case, the relators not having had an opportunity to be heard on the motion made, and orders made subsequent thereto, all subsequent actions by the respondent court were null and void.

The mere filing of the affidavit *ipso facto* worked the disqualification of the respondent district judge against whom it was directed. In re Woodside-Florence Irr. Dist., supra; McLeod v. McLeod, 126 Mont. 32, 243 Pac. (2d) 321; and State ex rel McVay v. District Court, supra. Accordingly, and except as it is especially provided and allowed by the provisions of subdivision 4 of section 93-901, R.C.M. 1947, all orders in this cause made by the respondent district judge subsequent to the filing of the affidavit of disqualification are set aside, vacated and held for naught as null and void for want of jurisdiction. The district judge originally presiding, the Honorable William F. Shallenberger, should call in a judge of another district to proceed with the cause. Rowan v. Gazette Printing Co., 69 Mont. 170, 220 Pac. 1104; Pincus v. Davis, 95 Mont. 375, 26 Pac. (2d) 986; State ex rel. Sullivan v. District Court, 122 Mont. 1, 196 Pac. (2d) 452.

Let the writ of prohibition issue forthwith.

MR. CHIEF JUSTICE HARRISON, concurs.

MR. JUSTICE ANGSTMAN:

I concur in the result reached in the foregoing opinion, but for a different reason. No useful purpose would be served in giving those reasons here.

MR. JUSTICES BOTTOMLY and ADAIR:

We do not concur in all that is said in the majority opinion herein, but we do concur in the result reached solely upon the authority of this court's opinion in State ex rel. Sherman v. District Court, 51 Mont. 220, 152 Pac. 32.