Argued before BEEKMAN, P. J., and GIEGERICH and O'GORMAN, JJ.

C. E. Miller, for appellant.

E. M. Wright, for respondent.

O'GORMAN, J. In December, 1898, the defendant, as owner, sold to the Evangelical Lutheran Church a piece of land in the city of New York; and this action is brought by the plaintiff, a real-estate broker, to obtain commissions on such sale. The only conversation between the plaintiff and the defendant occurred in September, 1897, when the plaintiff made some inquiries respecting a plot of land embracing the lots in question. About that time she had a conversation with the pastor of the church regarding the contemplated purchase by the church. Subsequently, in June, 1898, one Zollikofer, the treasurer of the church, wrote to the plaintiff, asking the price of the two lots which were thereafter purchased by the church. Plaintiff thereupon visited the defendant's office, and obtained the desired information from one of the defendant's clerks, and communicated it to Mr. Zollikofer. Nothing further seems to have been done by the plaintiff. Other brokers interested in the sale of the property, who also called it to the attention of the treasurer of the church, negotiated the sale, which was closed on December 15, 1898. It is uncontradicted that the sale, as finally concluded, was after the completion of the negotiations conducted by these other brokers, to whom the defendant paid the usual commissions. Even if it should be assumed that the plaintiff was the first broker to call the attention of the purchaser to this identical piece of property, that circumstance in itself would not make the defendant liable in this action. The plaintiff's right to compensation was dependent upon the performance of her obligation to bring the buyer and the seller to an agreement. This she did not do, and made no effort to accomplish. There is no evidence in this case to sustain the contention that the sale, as finally consummated, was induced by this plaintiff. The judgment in her favor, being without evidence to support it, must be reversed.

Judgment reversed, and new trial ordered, with costs to the appellant to abide the event. All concur.

---

(55 App. Div. 292.)

OLEAN ST. RY. CO. v. FAIRMOUNT CONST. CO.

(Supreme Court, Appellate Division, Fourth Department. November 27, 1900.)

PROCESS—NONRESIDENT—ENTICING INTO STATE—OPPORTUNITY TO LEAVE.

The president of a foreign corporation went to the city of New York at the invitation of a creditor of the corporation to confer with the latter concerning a settlement of a matter in dispute. While the two were discussing the matter on their first meeting, and the president had stated that he could not settle the claim until he had seen the corporation's treasurer, a process server stepped up and served a summons on such president in the creditor's action on the claim. Held that, even if the circumstances did not indicate that the creditor had fraudulently enticed such president into the state for the purpose of obtaining service on the corporation, the

service should be set aside, as the creditor was bound to give such president a reasonable opportunity to leave the state after the termination of the conference.

Appeal from special term, Cattaraugus county.

Action for money loaned by the Olean Street-Railway Company against the Fairmount Construction Company and others. From a judgment in favor of plaintiff, defendant company appeals. Reversed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

A. C. Wade, for appellant.
Allen J. Hastings, for respondent.

ADAMS, P. J. The defendant, the Fairmount Construction Company, is a foreign corporation organized and existing under the laws of the state of New Jersey. At the times hereinafter mentioned Clarence P. King was the defendant's president, and resided in the city of Philadelphia. The plaintiff is a domestic corporation, with its place of business in the city of Olean, Cattaraugus county, where its president, Wilson R. Page, resides. The summons herein was issued and the complaint verified by Page on the 25th day of May, 1900, and on the 29th day of June following they were personally served within the state upon John Fobes, the appellant's co-defendant. At this time Clarence P. King was claiming that the plaintiff herein was indebted to him in the sum of $674.44 for money loaned to the plaintiff on the 2d day of December, 1897, and was corresponding with Page, as president of the plaintiff, with a view to having his claim adjusted and paid. In answer to a letter demanding payment, Page wrote King that, if he would meet him in New York in the latter part of the week of July 15, 1900, he thought they could "come to some conclusion." To this request King assented, and suggested the 17th day of July as the day for meeting, whereupon Page again wrote King that he would meet him at the Astor House at 12 o'clock noon, on Saturday, July 21st. The parties met at the time and place last mentioned, and King presented his claim, which Page said he could not settle until he had seen a former treasurer of the plaintiff; and while conversing in regard to the matter a process server walked in, and served the summons and complaint in this action upon King, and thereupon the interview between the parties terminated. A motion was thereafter made to vacate such service upon the ground that King was induced by some scheme or device to come within the jurisdiction of the courts of this state in order that service of process might be obtained upon him; and it must, of course, be conceded that, if the truth of the appellant's contention were clearly established, service secured by such means should not be permitted to stand; for the court will not sanction any attempt by fraud or misrepresentation to bring a party within its jurisdiction. Snelling v. Watrous, 2 Paige, Ch. 314; Carpenter v. Spooner, 2 Sandf. 717; Metcalf v. Clark, 41 Barb. 45; Beacom v. Rogers, 79 Hun, 220, 29 N. Y. Supp.

507. The plaintiff's president, however, denies that he invited Mr. King to come to the city of New York for the purpose of obtaining service upon him. On the contrary, he declares that when he wrote King suggesting that city as the place of meeting he did not even know that he was the defendant's president, and there are some circumstances in the case which, to some extent, give color to this statement; but, on the other hand, it is a somewhat remarkable coincidence that the process server should have appeared upon the scene just as the two presidents had opened negotiations for a settlement of the demand which King was endeavoring to have adjusted, and that, as soon as the process was about to be served, Page announced that he could do nothing in the direction of settlement until he had seen a former treasurer of the plaintiff. Assuming, however, that the coincidence to which we have referred was purely accidental, and not the result of any trick or device, as perhaps we ought, in view of the decision of the special term, the fact remains that the defendant's president was induced to come within the jurisdiction of the court at the suggestion of the plaintiff's president, and for the express purpose of adjusting a claim against the plaintiff, which he had been assured by Page would probably then be adjusted. In these circumstances we think that good faith and a due regard for the proprieties of the case required of the plaintiff that, when the negotiations for a settlement of the matter which brought them together terminated, a reasonable opportunity should have been afforded the defendant's president to leave the city and state before any attempt was made to serve a summons upon him; and, inasmuch as this was not done, the plaintiff ought not to be permitted to take advantage of a course of conduct which, if not amounting to actual fraud and deceit, was certainly equivalent thereto, for it involved a breach of the confidence which King had reposed in the bona fides of the invitation of the plaintiff's president to place himself within the jurisdiction of the court. Allen v. Wharton (Sup.) 13 N. Y. Supp. 38; Higgins v. Dewey (City Ct. N. Y.) 13 N. Y. Supp. 570. The order appealed from should therefore be reversed, and the motion to vacate the service of the summons and complaint granted.

Order reversed, with $10 costs and disbursements, and motion to vacate service of the summons and complaint granted, with $10 costs. All concur; WILLIAMS and LAUGHLIN, JJ., in result.