In the Matter of Cristina de B. Patino, Respondent, against Antenor Patino, Appellant.

Cristina de B. Patino, Respondent, *v.* Antenor Patino, Appellant.

First Department, April 13, 1954.

*Murray I. Gurfein* of counsel (*Lee McCanliss* with him on the brief; *McCanliss & Early,* attorneys), for appellant.

*John McKim Minton* of counsel (*Paxton Blair* and *J. Harlin O'Connell* with him on the brief; *Patterson, Eagle, Greenough & Day,* attorneys), for respondent.

BREITEL, J. This is a consolidated appeal from three orders which, among other things, denied motions to vacate (1) an order of arrest in supplementary proceedings, (2) a subpœna in supplementary proceedings, and (3) the service of a summons and complaint in a plenary action. The parties are husband and wife, nationals of Bolivia, who have been litigating with one another in three continents. Both are nonresidents of the State, although there had been a time during the late war when they had resided here. The husband resides in France. The wife still has her sojourn here.

The supplementary proceedings relate to judgments aggregating $269,753.09. They were recovered by the wife against the husband in actions under a separation agreement. The present applications to vacate process were made by the husband. A bond for $255,000 has been posted by the husband to secure his appearance.

The question in the case is whether the arrest of and the service of process made upon the husband while he was temporarily in the United States was proper, he having entered New York under an agreement with his wife referred to as an " armistice ". The background for the arrangement is the energetic prosecution of litigation between the two in France, Spain, Bolivia, England and New York State. In the foreign litigation the husband has by and large been successful. In the New York litigation the wife has been successful.

Just prior to the making of the agreement for the " armistice " the husband, who is a member of a well-known Bolivian family controlling tin mines in that country, was anxious to come to New York City for purposes connected with the threatened nationalization of tin mines in Bolivia. It was the husband who sought the agreement for his visit to New York City with an immunity from service of papers. The negotiations were had between the respective attorneys for the couple, and the arrangement was for him to come to New York City for ten days " between two boats ". In connection with his stay he was not only to handle his business arrangements but also to seek an agreement with his wife for the settlement of their difficulties.

In our view of the case we do not believe it necessary to discuss the events that ensued in close detail. In broad outline the following occurred: The husband arrived in New York City on October 21, 1952, and between October 21st and October 27th there were three meetings between the couple. On Octo-

ber 27th the husband made an offer which the Referee, at Special Term, has found to have been made in bad faith. The finding of bad faith was related to the making of the request for the "armistice" and "in carrying out its conditions". It was based upon the Referee's view that in the light of the circumstances of the parties the offer by the husband was an unreasonably low one which was not followed by any better offer. On October 28th the husband's lawyer was telephoned and the meeting for the following day cancelled. On the afternoon of October 29th the wife's lawyer telephoned the husband's lawyer, saying that the offer had been made in bad faith and that the negotiations were terminated. Nothing was said about the "armistice". On October 30th, nine days after the husband's entry into New York City, he telephoned his wife to say goodbye. The following day, which was the tenth day, two hours prior to the husband's contemplated departure by plane for Paris, and two hours after an exactly measured ten days from the time the husband's boat had docked, he was arrested and served with the process which are the subject of these appeals.

The Referee recommended the denial of the motions to vacate because of the husband's bad faith in complying with the "armistice" agreement. That recommendation was followed and the case is before this court on appeals by the husband from the denial of the motions.

The husband had undertaken an obligation to make an offer in good faith, because he was the one who had sought to visit New York City and yet be free from enforcement of the judgments which had theretofore been recovered against him. A reading of the record makes it clear that neither of the parties nor their attorneys entered into the negotiations for the "armistice" or for the settlement of difficulties between the married couple in any open spirit seeking genuine peace between the parties. Rather, the attitude, the foundation for which had been well laid in the bitter litigation between the parties, was that of stiff-armed dealing and with alertness on each side to take advantage of the adversary.

The long line of many cases that have arisen in the past are quite different from the one before us. (Cf., however, *Ultch* v. *Ultch,* 96 N. J. Eq. 583.) The cases of the past relate to fraudulent enticement into the jurisdiction by the party who wishes to serve the nonresident, and once the enticement succeeds in bringing the nonresident into the jurisdiction the trap is sprung. (72 C. J. S., Process, § 39; 6 C. J. S., Arrest, § 72, p. 685;

§ 76, f.; 42 Am. Jur., Process, § 35; 4 Am. Jur., Arrest, § 102; 93 A. L. R., 872 *et seq.*; see, e. g., *Neotex Mfg. Co.* v. *Eidinger,* 250 App. Div. 504; *Shillman* v. *Toulson,* 211 App. Div. 336; *Garabettian* v. *Garabettian,* 206 App. Div. 502; *Olean St. Ry. Co.* v. *Fairmount Constr. Co.,* 55 App. Div. 292; *Allen* v. *Wharton,* 59 Hun 622, opinion 13 N. Y. S. 38; *Higgins* v. *Dewey,* 14 N. Y. S. 894; *Goupil* v. *Simonson,* 3 Abb. Prac. 474, and *Snelling* v. *Watrous,* 2 Paige Ch. 314.) In the present case it is the stranger to the jurisdiction who sought entry, and the question considered at Special Term was whether in seeking such entry he violated his promise to negotiate in good faith. We think it immaterial at this juncture whether the husband negotiated in good faith or not. Likewise we think it immaterial whether the wife in her own passive way was looking for a bona fide settlement of the litigations. The fact is, we are not fully convinced of the claimed serious intentions of either.

This agreement for immunity had two purposes. One purpose was to provide the husband with an opportunity to handle his business affairs, a matter of profound interest to both the husband and the wife, and the other purpose was to provide an opportunity for settling their personal difficulties. If either party sought to terminate the opportunities for one or the other of these purposes, whether for cause or for no cause at all, common decency required not only that the negotiations be terminated, but that notice be given that the " armistice " was also ended and a reasonable opportunity provided for the one present under the " armistice " to depart before the immunity expired. These, we assume too, were the necessary implications of the agreement, as a matter of intention. Any other procedure, such as the one followed here by the wife, turns the so-called " armistice " into a trap. The courts have always held that they would not sustain personal jurisdiction obtained by entrapment. (See particularly, *Neotex Mfg. Co.* v. *Eidinger, supra; Garabettian* v. *Garabettian, supra; Olean St. Ry. Co.* v. *Fairmount Constr. Co., supra,* and *Goupil* v. *Simonson, supra.*) The reasons that notice of termination of the " armistice " is required are: first, the calling off of the personal negotiations was no indication that the wife did not wish the husband to pursue to the best of his ability his efforts to protect the family's patrimony in Bolivia; second, it might be that the suggested termination of personal negotiations was but another way of bargaining; and third, a party to an " armistice " should not be permitted unilaterally to end abruptly an immunity conferred by an " armi-

stice ", based on unilateral determination of the good faith or bad faith with which it had been arranged. The last point is an essential one because only if " armistices " are thus respected will any ever be made. The principle is like that applicable to the armistice in war. Among civilized people it is expected that the band which travels under the white flag of truce should not fear its destruction or molestation because the enemy may determine in his view that it carries the flag in bad faith. Justified under a truce, perhaps, is the meeting of violence with violence. But the taking of direct action inconsistent with a truce is hardly justified on a unilateral weighing of the subjective operations of the adversary's mind.

Thus, on the record in this case we find that the husband was entitled to remain throughout the entire ten-day period; that the agreement provided that he could stay here for the entire period in order to handle his Bolivian business affairs; that his right thus to stay was never properly terminated by notice; and that a claimed overstay of two hours, assuming that it was an overstay, was not sufficiently substantial so that the courts would recognize it to defeat the immunity granted. Only an obsession with literalness could justify destroying the effect of an immunity, because the party protected by the immunity, without damage to anyone, plans his departure on an overseas plane, leaving a paltry few hours after exactly ten days, of twenty-four hours each, from the precise minute when his boat first docked in New York City. Indeed, it is highly questionable that the husband overstayed the " armistice ". Involved is a construction of the phrase in the agreement " between two boats ". Were it necessary to construe the phrase a more reasonable interpretation would allow for a minimal flexibility appropriate to overseas travel.

Accordingly, the orders denying the motions insofar as appealed from should be reversed and the motions granted, together, with costs and disbursements to the appellant. Settle order.

CALLAHAN, J. (concurring). Appellant and respondent are husband and wife. They have been estranged for some years, and have been engaged in various litigations in many countries throughout the world. The parties are nationals of Bolivia, where the husband owns extensive tin mines. The marital life of the parties centered largely in Paris, France. They separated there some years ago. Later they entered into a separation agreement. The wife has collected approximately $1,100,000

under this agreement charging a breach by the husband. The husband sued in other countries and obtained judgments for the return of the $1,100,000 as illegally obtained. The courts of this State, however, have upheld the wife's contentions as to the agreement (*Patino* v. *Patino*, 278 App. Div. 756, affd. 303 N. Y. 999). The wife has since obtained judgments on the agreement and for necessaries against the husband, on which more than $300,000 is now due.

In September, 1952, the Paris attorney for the husband asked the Paris attorney for the wife for leave to have the husband come to New York for ten days under an armistice that would give him immunity from arrest or service of process while here. The purpose of this was twofold. The husband believed he could take more effective steps in preventing Bolivian nationalization of his mines, if he could work from New York, and, secondly, he was to negotiate a possible settlement of the matrimonial difficulties of the parties while here.

This armistice was agreed to by the wife. The husband arrived in New York on October 21, 1952. He should have had until and including October 31st, free from service of process. Instead, on the afternoon of October 31st he was arrested on a civil order of arrest, and served with orders for examination in supplementary proceedings and with a summons and complaint, all issued by the wife's New York attorney.

This violation of the agreement of amnesty has been justified by the Referee and the Special Term on the theory that the conduct of the husband, after he arrived in New York, amounted to a refusal in bad faith to negotiate with his wife to settle their marital difficulties, and that, therefore, the wife was entitled to disregard the armistice. It is with the factual finding of bad faith on the husband's part and the conclusion drawn therefrom that I strongly disagree. I find, rather, that the evidence discloses lack of good faith on the wife's part, or conduct which is the equivalent in law to bad faith.

The controversy centers in the events which occurred at a conference between the parties and their attorneys in a New York hotel on October 27, 1952, and thereafter. In the meeting of the 27th the husband made an offer to waive his rights under his foreign judgments for the $1,100,000 and to deposit approximately $540,000 in trust for the support of the wife and the two children of the parties, the principal of the trust to go eventually to the children. In addition, the husband requested an agreement that certain jewelry valued at $600,000, which he had previously given to the wife, be left by the wife to the children.

It has been found by the Referee and Special Term that this offer was "fantastic", and that it was so ridiculously meager as to show lack of good faith on the husband's part. It has been held that the wife had the right because of the husband's parsimony in this offer to make her own unilateral decision that bad faith was evidenced thereby and to treat the armistice as at an end. I find no showing of bad faith on the part of the husband and disagree with the right of the wife to ignore the armistice based on such finding. In my opinion, we should hold that it was the duty of the wife as well as that of the husband to attempt to carry forward the negotiations for settlement of the matrimonial disputes, and that the record shows that the wife absolutely failed to do this.

Assuming that a court would ultimately find that an offer of over half a million dollars was insufficient for a man of the husband's wealth, at least it was a substantial sum. It was merely an opening offer of settlement and the wife should have made her own demands known. Instead, when the husband's offer was made, the wife and her attorney made no comment. Her lawyer said that he could see evidence of great dissatisfaction on the part of the wife, and, therefore, he suggested that it would be better to adjourn the meeting until October 29th. No counterproposal of any nature was ever made thereafter by the wife. The meeting of October 29th was cancelled by the wife's attorney on a plea of another engagement. This plea was concededly false. The wife's lawyer then agreed to fix the time for another engagement. Instead, on the 29th he called the husband's lawyer and said that the negotiations were terminated. Thereupon, the wife's lawyer prepared the papers for the arrest and the service of process. The husband was left entirely unaware of any intention of hostile action. He called his wife on October 30th to say "Goodbye". She conceded that the conversation was cordial.

On October 31st, within two hours of his scheduled departure, and while in the course of a business engagement respecting the nationalization of his properties, the husband was arrested.

In my opinion, tactics of the kind pursued by the wife should be disapproved not merely on the legal ground that the husband was entitled to express notice of cancellation of the armistice and an opportunity to depart. While I have no disagreement with the views of the majority in this respect, I feel that we should go farther and express our condemnation of the wife's

methods and procedures as evidencing conduct on her part equivalent to bad faith and entrapment.

I concur in the reversal of the orders appealed from not only for the reasons stated in the majority opinion, but also on the separate grounds indicated herein.

PECK, P. J., BASTOW and BERGAN, JJ., concur with BREITEL, J.; CALLAHAN, J., concurs in opinion, in which BERGAN, J., concurs.

Orders, so far as appealed from, unanimously reversed, with $20 costs and disbursements to the appellant, and the motions granted. Settle order on notice. [See *post,* p. 1029.]