## SCHWARZ v. ARTCRAFT SILK HOSIERY MILLS, Inc., et al.

### SCHWARZ et al. v. SAME.

### Nos. 199, 200.

Circuit Court of Appeals, Second Circuit.

March 18, 1940.

Simpson, Thacher & Bartlett, of New York City, and Bernard L. Frankel and Sundheim, Folz & Hirsch, all of Philadelphia, Pa. (Thomas D. Thacher and Albert C. Bickford, both of New York City, of counsel), for respondents.

Katz & Sommerich, of New York City (Otto C. Sommerich and A. Joseph Geist, both of New York City, of counsel), for plaintiffs-appellants.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

CHASE, Circuit Judge.

Two appeals have been consolidated for hearing. The service of summons in each of two actions brought in the District Court for the Southern District of New York was vacated and the actions dis-

missed. As nothing turns upon any distinction between the actions, what is hereinafter said in respect to the cause in which appellant is the sole plaintiff will suffice also to dispose of the appeal in the action in which his wife is joined as a party plaintiff. Both of them are residents of the Southern District of New York.

Ralph J. Schwarz was for many years a stockholder, vice-president and director of the defendant Artcraft Silk Hosiery Mills, Inc., a Delaware corporation engaged in the manufacture and sale of hosiery. Its factory is in Philadelphia and there defendant, Jacob Kugelman, its president, had a residence though his domicile was in Florida. The corporate defendant for many years has maintained a sales office in New York City in charge of the plaintiff as to the nature of which more will be said later.

The plaintiff had a contract with Kugelman which provided that whenever plaintiff left the employ of the corporate defendant he would sell to Kugelman his stock in the defendant corporation which Kugelman agreed to buy and pay for at its then book value. The contract provided for arbitration as to the book value if the parties could not agree. In June 1939, the employment of Schwarz was terminated and he and Kugelman made an unsuccessful effort about the 20th of June to agree upon the price at which Kugelman should take over the Schwarz stock and pay for it. The discussion was not wholly amicable and Schwarz threatened to sue but Kugelman persuaded him to think things over for a few days and then they were to get together again to try to settle. It was understood by both that this would be done and that until there had been another opportunity to confer about the matter Schwarz should bring no suit. Kugelman wanted to have the conference at his home in Abington, Philadelphia, and expected Schwarz to call him from New York by telephone during the following week to make arrangements for it. Kugelman did not, however, hear from Schwarz and on July 5th, 1939 telephoned from Philadelphia to Schwarz in New York. Thereafter they had some correspondence about the matter. Schwarz insisted upon meeting Kugelman in New York while Kugelman wanted the meeting in Philadelphia. Schwarz succeeded in having his way about it and a tentative agreement was made to meet on Monday, July 17th at the Empire State Club in the City of New York. In making this arrangement Kugelman wrote Schwarz in part as follows: " * * *, I will make it a point to meet you, as you suggest, on Monday: but I think, to be sure, it would be a good idea if you phoned me at Westhampton, Long Island 1150 on Sunday evening, preferably around six-thirty to seven o'clock, and I will know definitely what my plans are for Monday morning."

The reference to Westhampton on Long Island was to the summer home Kugelman rented there and where he was accustomed to spend his week-ends with his family. He was planning to spend that week-end there with his family and did so. Schwarz telephoned him at Westhampton as requested and Kugelman then told Schwarz he preferred to meet him on Tuesday the 18th in New York instead of on Monday. The meeting so postponed at Kugelman's request was had in New York City and toward the end of it a summons was served upon Kugelman as an individual defendant and also upon him as the president of the defendant corporation in each of the actions involved in this appeal. Nothing need now be said about the nature of either action aside from stating that in one the plaintiff charged Kugelman with misfeasance as an officer of the corporation and sought an accounting and in the other the charge was made that the corporation's books have not been properly kept and did not reflect the actual value of the plaintiff's stock which Kugelman is bound to buy. The trial judge vacated the service in both actions on the ground that Kugelman was fraudulently induced to meet Schwarz in order that the service could be made upon him in New York.

It is now settled in New York that misstatements which mislead a defendant and induce him to appear where service may be, and is, made upon him which otherwise would not have then been made afford no ground for vacating the service provided the trick does not lure the person served into the jurisdiction. Gumperz v. Hofmann, 245 App.Div. 622, 283 N.Y.S. 823, affirmed 271 N.Y. 544, 2 N.E.2d 687. Where one is within the potential reach of service of process he has no grievance if he is induced by misinformation to permit the process server to obtain an opportunity to serve which he would not otherwise have given him.

It was shown that Kugelman voluntarily came into the jurisdiction when he

went to Westhampton to spend the weekend at his summer home. Under Rule 4(f) of the Rules of Civil Procedure (28 U.S.C. A. following section 723c) process could have been served upon him anywhere in New York. See Devier v. George Cole Motor Co., D.C., 27 F.Supp. 978. He was, therefore, subject to service at least on Monday, July 17th at his summer home in Westhampton. Rule 4(d) (1), Rules of Civil Procedure. He remained for the conference the next day because it suited his own convenience to have it then rather than on Monday as Schwarz proposed. No doubt it is true that Kugelman would have gone back to Philadelphia and would not have been in New York Tuesday but for the conference. Yet, he was in no real sense induced by Schwarz to remain over for it. In so far as he was in any way the victim of deceit which brought about service of process, the enticement did not bring him into the jurisdiction or keep him there. So there was a failure to show a legal ground for setting aside the service of process in either action. Tope v. Beal, 3 Cir., 98 F.2d 548. Compare, Jaster v. Currie, 198 U.S. 144, 25 S.Ct. 614, 49 L.Ed. 988. It was at least shown prima facie that the corporation was doing business in New York. As we have said before, it is usually not very satisfactory to have to decide as to that upon affidavits alone and where a real controversy exists about it the better way is either for the court to take evidence or refer the matter. Here the court did not get to the point since the service was set aside for the reasons stated. Assuming that the fact will eventually turn out to be as prima facie shown, the remaining question is whether in the suit for an accounting the proper venue was the Southern District of New York.

Schwarz was alleged to be a stockholder and also a director of the corporation. In Philipbar v. Derby, 2 Cir., 85 F.2d 27, we held that 28 U.S.C.A. § 112, so limited the venue in a derivative suit by a stockholder of a corporation that such a suit could be brought in a federal court only in a district where the corporation might have brought it. Since the decision in Neirbo Company et al. v. Bethlehem Shipbuilding Corporation, Ltd., 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. ——, Nov. 22, 1939, it may be that this corporation is to be treated as a resident of the Southern District of New York. We leave that open for the present as we think the objection as to venue is futile in any event.

As a director, Schwarz could, and did, bring the suit for an accounting by virtue of the provisions of Secs. 60 and 61 of the General Corporation Law of New York (Consol.Laws, c. 23). Sec. 60 provides for the subjection of directors or officers of a corporation to liability for neglect, mismanagement, waste, and non-performance of their corporate duties. It is substantially the same as the old common law liability. But it was held to apply to foreign corporations. Miller v. Quincy, 179 N.Y. 294, 72 N.E. 116. And a cause of action under the substantive law of New York was created. Hand v. Kansas City Southern Ry. Co., D.C.N.Y., 55 F.2d 712. See also, In re Burnet-Clarke, 2 Cir., 56 F.2d 744, 747. Since this state statute created a new cause of action, as distinguished from merely a new remedy, the suit to enforce it may be tried in a federal court. Pusey & Jones v. Hanssen, 261 U.S. 491, 498, 43 S.Ct. 454, 67 L.Ed. 763; Scott v. Neely, 140 U.S. 106, 109, 11 S.Ct. 712, 35 L.Ed. 358. New rights and privileges established by a state may be enforced in federal courts, Cowley v. Northern Pacific R. Co., 159 U.S. 569, 16 S. Ct. 127, 40 L.Ed. 263, to the same extent as in the state courts. Davis v. Gray, 16 Wall. 203, 21 L.Ed. 447. As such a suit, this action was properly brought in the Southern District of New York. Whether plaintiff's failure to maintain his status as a director would be ground for abatement is not now decided.

Reversed.