**R. P. OLIVER, Plaintiff,**

v.

**Lenard L. CRUSON, Defendant.**

Civ. No. 98.

United States District Court
D. Montana,
Billings Division.

July 8, 1957.

Butts & Marchi, Billings, Mont., for plaintiff.

Brown, Sande, Symmes & Forbes, Billings, Mont., for defendant.

JAMESON, District Judge.

Defendant has filed a motion to dismiss on the grounds: (1) that defendant was lured into this jurisdiction by artifice and fraud for personal service; (2) of forum non conveniens; (3) of improper venue; and (4) that the complaint fails to state a claim upon which relief can be granted.

The motion is supported by an affidavit of the defendant from which it appears that the defendant is a resident of Lyons, Oregon; that plaintiff and defendant, together with twenty-three other persons, are limited partners in R. P. Oliver, Ltd., which has its principal office in Musselshell County, Montana; that plaintiff is the only general partner; that twenty-three of the limited partners reside in Oregon; that differences had arisen in the partnership and that two meetings with respect thereto were held in Portland, Oregon on April 30 and May 10, 1957. The affidavit recites that on May 14, 1957, plaintiff, who was then in Oregon, requested defendant to come to Billings, Montana with plaintiff to meet with Boyd Blair, also a limited partner, in an effort to settle the differences existing with respect to the management and operation of the partnership; that defendant at first refused to go; that plaintiff thereupon offered to pay the cost of transportation, and on May 18th, the parties traveled in the same airplane, seated side by side, from Portland to Billings; that the difficulties existing between the parties were discussed, but at no time did plaintiff advise defendant that he had filed suit or intended to file suit against defendant in Montana; that upon arrival in Billings on May 18th, when he alighted from the plane, defendant was served with copy of summons and complaint in this action; that plaintiff thereupon told defendant that if he wanted to get in touch with plaintiff he could reach him through plaintiff's attorney; that an hour or so later defendant and Boyd Blair attempted to reach plaintiff at the attorney's office, but were unable to do so; that no effort was made by plaintiff to hold any meeting in Billings with defendant and Blair; that plaintiff returned to Oregon shortly after arrival in Billings; that complaint in this action was verified by plaintiff in Oregon

on May 16, 1957; that plaintiff alleges in his complaint that defendant made slanderous utterances concerning plaintiff in the State of Oregon.

The motion is further supported by corroborating affidavit of Boyd Blair, who recited in part that he returned to Billings on May 14, 1957, from the Portland meeting on May 10th; that upon his return he received a phone call from plaintiff, who was then in Portland, Oregon, requesting him to phone defendant and persuade defendant to come to Montana to meet with plaintiff and Blair; that Blair phoned defendant and urged him to come with plaintiff to Billings in an effort to resolve the differences existing among them; that on May 18, 1957, Blair was at the Airport to meet the plane upon which plaintiff and defendant were to arrive; that one of plaintiff's attorneys was there and requested Blair to point out defendant; that Blair did so and defendant was thereupon served with papers; that when he and defendant attempted to call plaintiff in the attorney's office on May 18th there was no answer; that he was advised by one of plaintiff's attorneys on May 20th that plaintiff had left town that morning, but upon calling plaintiff in Seattle, he ascertained that plaintiff had left Billings on the evening of May 18th.

The deposition of plaintiff was taken by defendant on June 7, 1957. Plaintiff confirmed the statements in defendant's affidavit that plaintiff had verified the complaint in this action in Portland, Oregon on May 16, 1957, after it had been prepared by his Montana attorneys; that plaintiff and defendant traveled together from Portland to Billings on May 18th, and that plaintiff paid defendant's transportation.

Plaintiff testified that his purpose in coming to Montana "was to have this thing cleared up, the slanderous remarks that Mr. Cruson had made about me"; that he had phoned his attorney on May 17th not to file suit until after the plane left Spokane, Washington, and that if it appeared there was any chance to get the

thing settled "by getting together with Blair and our accountant, Don Gohsman" he would call from Spokane, but if the attorney did not hear from him he should file suit. Plaintiff testified further that on the plane trip he asked defendant about the slanderous remarks and that defendant told him he wanted a portion of plaintiff's interest, "that it wasn't that the books were wrong, he did want an audit of the books, but that he wanted me to split my share of the section with him, and that was the only thing that would satisfy him"; that plaintiff asked defendant if he would retract the statements he had made and defendant said "he had said nothing that was not true and that he would not retract any statements;" that by the time they arrived at Spokane there was no reason to call his attorney in Billings "and tell him not to file suit." Plaintiff confirmed in essence the conversation with Blair in which plaintiff requested Blair to telephone defendant to ask him to come to Montana. Plaintiff testified further that he requested his attorney to prepare the complaint on May 14th and that it was his intention to file the suit "if we could get service on Mr. Cruson, and if it were not possible to settle these differences without a suit"; that shortly thereafter he talked to defendant about coming to Montana; that he requested defendant to come to Montana with him to settle their difficulties; that defendant was reluctant to come at that particular time and that plaintiff offered to pay for defendant's transportation; that the complaint was being prepared when plaintiff talked with defendant; that he did not inform defendant of his intention to file suit either prior to leaving Portland or on the plane trip; that after the defendant was served upon arrival in Billings, plaintiff told defendant that if defendant and Blair wanted to get in touch with him he would be with plaintiff's attorney, but did not tell him where he and the attorney would be; that the plane arrived in Billings about 2:20 P.M.; that after arrival in town with his attorney, they had a drink and then went to the

attorney's office about 3:15 and stayed there for close to an hour; that he left Billings for Seattle by plane at 5:35 P. M.; that he believed he made the reservation for the return trip from his attorney's office or that it may have been made from the Crystal Lounge; that after plaintiff and defendant debarked from the plane there was no discussion with Blair as to where they would meet, "because there was no reason for discussion, as it was not that anything was wrong with our company, but because Cruson wanted a portion of my pie." Plaintiff further testified that none of the witnesses who heard the alleged slanderous remarks resided in Montana.

Plaintiff was interrogated with respect to many other matters pertaining to the limited partnership, but the foregoing summarizes the testimony pertinent to defendant's motion to dismiss on the ground that the defendant was lured into this jurisdiction by artifice and fraud for personal service.

Plaintiff's attorney denies in his brief that Blair ever inquired of him with respect to when plaintiff left Billings. With reference to Blair's affidavit that he and defendant attempted to call plaintiff at plaintiff's attorney's office, counsel state that "there are several telephones available at which plaintiff's attorneys could have been located, but no messages were left that were received by plaintiff or his attorney." He also calls attention to the fact that Blair met plaintiff's attorneys on May 20th and 21st, and that Blair was obviously working with defendant. Counsel call attention to other discrepancies in the affidavits, but they do not change the facts pertinent to this motion.

The Court is not of course concerned with the merits of the controversy. The sole question is whether plaintiff induced defendant to come to Montana by means of fraud and deceit, or by trick or device, to enable plaintiff to obtain service upon defendant. If so, the motion to dismiss must be granted.

The general rule is stated by Corpus Juris Secundum as follows:

"Personal service is void if obtained by inveigling or enticing the person to be served into the territorial jurisdiction of the court by means of fraud and deceit, actual or legal, or by trick or device, and in such case defendant is not required to appear or defend. So service is void if obtained by securing defendant's presence within the jurisdiction by means of criminal process, or by pretense of settlement, whether the matter of a settlement was first broached by plaintiff or defendant; but it has been held that the rule is otherwise if there is a bona fide purpose to discuss the matters in controversy in an attempt to reach a settlement. * * *" 72 C. J.S. Process § 39, p. 1049. See also 23 Am.Jur. Fraud and Deceit, Par. 98, p. 875; and 42 Am.Jur. Process, Par. 35, p. 32.

In State ex rel. Ellan v. District Court, 97 Mont. 160, 33 P.2d 526, 93 A.L.R. 865, the plaintiff and defendant had traveled together from Lewiston, Idaho to Helena, Montana by automobile on December 7th. The declared purpose of the trip was to seek a compromise by conference among the parties, one Orino, and the Highway Commission. Defendant claimed, as here, that he was enticed into the state under a pretense of a conference looking toward compromise, whereas the actual purpose was to obtain service of process in an action against him. Motion to quash summons was denied by the trial court. In granting a writ of prohibition, the Supreme Court called attention to the general rule that where a non-resident party or witness comes into the state for the purpose of attending a trial, he is immune from service for a reasonable period to enable him to return to his home, quoting from Stewart v. Ramsay, 242 U.S. 128, 37 S.Ct. 44, 61 L.Ed. 192. The court continued:

"The question before us is usually treated under the head of fraud and deceit in enticing a nonresident into the jurisdiction in order to secure

service upon him, and it is said that the service should be set aside when the defendant is procured to come into the jurisdiction by pretense of settlement. (Citing cases.)

"We can conceive of no valid reason for the differentiation. The law favors the compromise and settlement of disputed claims (12 C.J. 336), and should protect a nonresident who comes into this state at the solicitation of his adversary for the purpose of attempting such a disposition of a controversy, to the same extent as when one comes here as a party to, or a witness in, a case in court. As was said in Allen v. Wharton, 59 Hun 622, 13 N.Y.S. 38, 39, respecting a situation similar to that in the case at bar: 'Good faith on the part of the plaintiff required that he should have permitted the defendant again to leave this city without making service of the summons when it became evident that no settlement would be effected through his agency. That was violated in making the service which was made upon him. It was a breach of the confidence which had been inspired * * * and the settled practice requires that the service of the summons made, as this was made, should not be permitted to stand.' * * *

"A bona fide attempt to compromise and settle a controversy without the trouble and expense of the institution of suit and the trial of the cause is a more important step in connection with the cause than argument of a demurrer or the taking of a deposition for the preservation of testimony, and the general rule as to immunity should be extended to cases wherein, as here, a party to a controversy has been induced for this purpose to come within rifle range, as it were, under a flag of truce; if the purpose of the parley is not accomplished, honor and fair dealing should dictate that such person be permitted a reasonable time within which to return to the safety of the position from which he was induced to withdraw, before his adversary goes into action." [97 Mont. 160, 33 P.2d 530.]

In Kelly v. Citizens Farmers National Bank of Chickasha, 1935, 174 Okl. 380, 50 P.2d 734, 736, the defendant Thomas, in response to a letter from plaintiff's attorney, went to the office of the attorney in Chickasha to discuss settlement of a note owing the plaintiff bank by Thomas and others. As soon as defendant arrived in the attorney's office, the attorney had his stenographer file complaint and summons and arranged for service upon this defendant. As the court said, "this must have been before any discussion was had relative to adjustment of the matter, because within ten or fifteen minutes after the arrival of Thomas at the office he was served with the summons." In a well reasoned opinion, the Supreme Court of Oklahoma held that the trial court erred in denying defendant's motion to quash summons. The court reviewed many authorities in holding that inveigling or enticing a person to be served into jurisdiction of court by fraud and deceit, or by trick or device, to obtain service of process on him constitutes an abuse of process, and that service obtained under such circumstances is ineffective when properly challenged. The court held further that "the gist of a fraudulent misrepresentation is the producing of a false impression upon the mind of the other party, and if this result is actually accomplished, the means of accomplishing it are immaterial", quoting from International News Service v. News Publishing Co., 118 Okl. 113, 247 P. 87. See also: Bowes v. Superior Court of Alameda County, Cal. App.1942, 124 P.2d 667; Margos v. Moroudas, 1945, 184 Md. 362, 40 A.2d 816.

I agree with counsel that "each case must stand on its own bottom" and that a careful analysis of the facts is necessary to determine whether defendant was induced to come to Montana by fraud and deceit of plaintiff. The perti-

nent testimony of both parties has been summarized. Under plaintiff's own admission it is clear that defendant came to Montana at plaintiff's request to attempt to settle the difficulties existing in the partnership; that defendant at first was reluctant to make the trip; that plaintiff talked to defendant more than once; that at the same time plaintiff's attorneys were preparing complaint in this action and that the complaint was sent to Portland and verified by plaintiff there on May 16th; that plaintiff phoned Blair to request defendant to come to Billings to meet together and with Don Gohsman, the firm's accountant; that plaintiff paid defendant's transportation to Billings and rode with him on the airplane to Billings on May 18th; that plaintiff did not at any time either before leaving Portland or during the plane trip to Billings tell defendant that suit would be filed; that upon their arrival at the Billings Airport, defendant was served in this action. There is some discrepancy in the testimony with respect to the availability of plaintiff and his counsel the afternoon of May 18th, but plaintiff himself testified that the plane arrived at 2:20 P.M.; that he was in the office of his attorney from 3:15 to 4:15; and that he left by plane at 5:35 P.M.

■ On the basis of these facts, I cannot escape the conclusion that defendant was enticed to Billings under pretense of a conference looking toward settlement of the difficulties existing between the parties and other members of the partnership; that no bona fide effort was made by plaintiff to attempt to hold a conference after arrival in Billings; and that defendant was lured into the jurisdiction of Montana by fraudulent misrepresentation for the purpose of service of process. The fact that plaintiff may have concluded on the trip to Billings that a conference would be useless is immaterial, since neither that fact nor the fact that plaintiff was starting suit was communicated to defendant prior to arrival in Billings.

The cases upon which plaintiff relies are distinguishable. In Schwarz v. Artcraft Silk Hosiery Mills, 2 Cir., 110 F.2d 465, 467, the defendant had come voluntarily to the state of New York to spend a week-end at his summer home, and while there elected to stay over for a meeting that was supposed to be held, but instead was served with process. The court properly held that "the enticement did not bring him into the jurisdiction or keep him there."

In Commercial Mutual Accident Co. v. Davis, 213 U.S. 245, 29 S.Ct. 445, 448, 53 L.Ed. 782, the court held that the trial court might have found "that there was a bona fide attempt to settle the controversy between the parties, and that it was only when they failed to settle that service of summons was made." Here, service was made upon the defendant as soon as he stepped from the plane and prior to any possible settlement negotiations.

In Jaster v. Currie, 198 U.S. 144, 25 S.Ct. 614, 615, 49 L.Ed 988, the plaintiff had brought a previous action in Nebraska for the same cause and served notice upon the defendant's attorney that the plaintiff's deposition would be taken in Ohio on September 5, 1899. The defendant was advised by his attorney to be present and went to Ohio for that purpose only. The deposition was taken and the defendant then went to his father's house in the same county for the night of September 5th. He left for Nebraska on September 8th, but the writ in the Ohio suit was served on September 7th. In holding that the service of the writ was not unlawful, the Supreme Court of the United States pointed out "that there was no misrepresentation, express or implied, with regard to anything, even the motives of the plaintiff"; that "the parties were at arm's length"; that the taking of the deposition needed no justification, and it could be taken arbitrarily if the plaintiff chose, and that "the defendant could be served with process if he saw fit to linger in Ohio."

Defendant's motion to dismiss is granted on the ground that defendant was lured into this jurisdiction by artifice and fraud for the purpose of service of process. In view of this conclusion, it is unnecessary to consider the other grounds of defendant's motion.