**E/M LUBRICANTS, INC., Plaintiff,**

v.

**MICROFRAL, S. A. R. L., a Foreign corporation, Defendant.**

No. 80 C 3239.

United States District Court, N. D. Illinois, E. D.

Aug. 20, 1981.

Donald Rupert, Kirkland & Ellis, Chicago, Ill., Robert Brigham, West Lafayette, Ind., for plaintiff.

Thomas Nash, Burke & Smith, Chicago, Ill., for defendant.

MEMORANDUM OPINION

GRADY, District Judge.

This is an action for breach of a license agreement. Before the court is defendant's motion to dismiss for lack of personal jurisdiction on the ground that plaintiff fraudulently enticed its representative into the jurisdiction to serve him with process.[1] Fed.R.Civ.P. 12(b)(2). The motion is granted.

Plaintiff E/M Lubricants, Inc. ("E/M") is a Delaware corporation with its principal place of business in Lafayette, Indiana, and is engaged in the sale and licensing of patented processes for the treatment of metals. In May of 1979, plaintiff entered into a license agreement with Microfral, S.A.R.L. ("Microfral"), a French corporation, under which Microfral obtained the right to use and market plaintiff's processes in exchange for its promise to make monthly royalty payments. In February of 1980, a dispute arose with respect to Microfral's obligation to meet the minimum royalty payments. For reasons not relevant to this motion, Microfral refused to make the payments and the instant action was commenced.

We are concerned in this motion with the way in which process was served on the French corporation. Between February 1980 and June 1980, the parties exchanged letters in an effort to resolve the dispute. On April 17, 1980, defendant's president, Jean-Claude Malouvier, sent a telex to plaintiff's president, Lowell Horwedel, for the purpose of arranging a meeting to discuss the dispute. The telex stated, "Wish to meet you about the Abex question during one of my trips . . . at West Lafayette or Chicago, as you like. Telex your reply please." Horwedel Affid. Ex. A. The following day, Horwedel replied, "Available June 2 and 3 only to discuss Abex in West Lafayette . . . Please advise so I can keep date open." *Id.* Ex. B. Malouvier countered, "Would like to meet you Chicago by reason of the little time at my disposal and having covered most of the ground feel sure you will understand." *Id.* Ex. D. In a letter of May 22, 1980, Malouvier further explained to Horwedel that "the grievances which are set out in the aforementioned letters are extremely serious and have grave consequences for the Microfral Company. That is the reason why we should like to arrive at a solution at our next meeting of June 25 in Chicago, in order to refrain us from taking other steps because, once more, of the enormous detriment you have caused us." Malouvier Affid. Ex. D. In a subsequent exchange of telexes, the final one having been sent on June 11, the parties decided to meet in Chicago on the evening of June 24.

By affidavit, Malouvier states that although he did intend to transact other business in the United States in June, he traveled to Illinois solely for the purpose of conducting settlement negotiations with Horwedel. On the evening of June 23, the evening prior to the scheduled meeting, Malouvier received a call in his Chicago hotel room that a package had arrived for him in the lobby. Upon reporting to the lobby, Malouvier was served with a summons in the instant case.

In this motion, defendant seeks to quash service of process on the ground that he was fraudulently enticed into the jurisdiction for the purpose of serving him with process.[2] Plaintiff counters with two arguments. First, it contends that Malouvier's telex of April 21, 1980, established that the idea of coming to Chicago was entirely Mal-

---

1. Defendant has also moved to dismiss on the ground that under the license agreement, plaintiff's claim is subject to mandatory arbitration. In view of our disposition of the personal jurisdiction issue, we do not reach the arbitration question.

2. Defendant relies on the rule recognized in Illinois and in most jurisdictions which provides that where a party has been induced by fraud or trickery to come within the jurisdiction of the court to be served with process, the service may be quashed on the party's motion. *Wanzer v. Bright,* 52 Ill. 35 (1869); *Empire Manufacturing Co. v. Ginsberg,* 253 Ill.App. 242 (1929). *See generally,* "Attack On Personal Service As Having Been Obtained By Fraud Or Trickery," 98 A.L.R.2d 551.

ouvier's. Plaintiff therefore concludes that Malouvier's entry into the forum state was voluntary and not the result of any enticement offered by plaintiff. Second, plaintiff points out that it did not decide to sue Microfral until June 17, 1980, six days after the last telex between the parties. Plaintiff thus argues that at the time Horwedel arranged the meeting, he did not misrepresent his intention to reach an amicable resolution.

 Plaintiff's first argument is unpersuasive. To say that the meeting in Chicago was Malouvier's idea tells only half the story, and the less important half at that. Defendant's president offered to come to Chicago for one purpose—to resolve the dispute regarding its obligations under the license agreement. Plaintiff's president encouraged Malouvier to make the trip for this purpose. *See* telex of 4/18/80, Horwedel Affid. Ex. D. Thus, Malouvier came into this jurisdiction voluntarily only because Horwedel had agreed to discuss the matter with him. Moreover, whether or not the idea to meet in Chicago originated with defendant seems largely irrelevant to the issue of fraudulent enticement. It is not necessary that the defendant's conduct be the sole cause of the defrauded party's reliance on a misrepresentation. *Tcherepnin v. Franz*, 393 F.Supp. 1197, 1217 (N.D.Ill.1975); *Mitchell v. McDougall*, 62 Ill. 498 (1872); *Endsley v. Johns*, 120 Ill. 469, 12 N.E. 247 (1887); Restatement 2d of Torts, § 546, comment b (stating that liability will attach if the fraudulent representation has "played a substantial part, and so has been a substantial factor, in influencing [the] decision."). Here, inasmuch as plaintiff's agreement to discuss a settlement contributed to defendant's decision to enter the jurisdiction, the causal connection is sufficient.

This is not to say, however, that where a potential defendant enters a jurisdiction to discuss settlement and to transact other business, he will be immune from process. Thus, in *Schwarz v. Artcraft Silk Hosiery Mills, Inc.*, 110 F.2d 465 (2d Cir. 1940), defendant agreed to come to New York to discuss a pre-lawsuit settlement. A few days prior to the negotiations, the defendant visited his summer house in Long Island. Well rested, defendant appeared for the negotiations and was served with process. The court denied defendant's motion to quash since "[i]t was shown that [defendant] voluntarily came into the jurisdiction when he went to Westhampton to spend the weekend at his summer house.... Insofar as he was in any way the victim of deceit which brought about service of process, the enticement did not bring him into the jurisdiction or keep him there." 110 F.2d at 467. *Schwarz* is distinguishable from our case. Here, as Malouvier's affidavit attests, Malouvier entered the jurisdiction only to discuss settlement. In circumstances such as these, where plaintiff contributes to defendant's decision to enter the jurisdiction to negotiate a settlement and defendant enters the jurisdiction for that purpose only, the fraudulent enticement doctrine should apply.

Nor are we convinced by plaintiff's second argument. That plaintiff did not decide to file suit until after the parties had agreed to discuss settlement indicates only that plaintiff did not intend to entice defendant into Illinois at the time the arrangements were made. Nonetheless, enticement may be inferred from plaintiff's failure to notify defendant after June 17 that it had decided that pre-lawsuit negotiations were no longer feasible. Although silence is deceitful only where circumstances give rise to a duty to speak, the duty has been imposed where the defrauding party has made statements which are subsequently found to be inaccurate and where he knows or should know that the other party is relying on the inaccurate statements. *Butler Aviation Int'l. Inc. v. Comprehensive Designers, Inc.*, 425 F.2d 842 (2d Cir. 1970); *Loewer v. Harris*, 57 F. 368 (2d Cir. 1893); *Fischer v. Kletz*, 266 F.Supp. 180 (S.D.N.Y. 1967); *Strand v. Librascope*, 197 F.Supp. 743 (E.D.Mich.1961); *Hush v. Reaugh*, 23 F.Supp. 646 (E.D.Ill.1938); *St. Joseph Hospital v. Corbetta Construction Co., Inc.*, 21 Ill.App.3d 925, 316 N.E.2d 51 (1974); *see also Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969).

The Restatement 2d of Torts, § 551(2) has codified the rule announced in these cases and provides in part that "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated . . . (c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so; . . . ." Although § 551 treats liability for nondisclosure in business transactions, the equitable considerations underlying the rule are fully applicable in the instant case.

Finally, we note that the Federal Rules of Civil Procedure have similarly imposed the duty to correct a statement made in the course of discovery which "though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." Fed.R.Civ.P. 26(e)(2).

In the case at bar, there is little doubt that Malouvier reasonably relied on the representation made by plaintiff on May 18 and confirmed on June 11 that plaintiff was willing to discuss settlement. Although Horwedel may fully have intended to pursue negotiations on June 11, having subsequently changed his mind, he was under a duty to correct the false impression.[3]

Two additional reasons lead us to impose the obligation to speak where the plaintiff claims he is willing to negotiate and then changes his mind. First and most significantly, it is in the interest of justice to promote the speedy and amicable resolution of disputes as an alternative to legal battle. Conduct such as that engaged in by plaintiff in this case does not further that interest. Out-of-state persons in the shoes of Malouvier will simply forego the opportunity to negotiate a settlement rather than risk subjecting themselves to service in an unfavorable jurisdiction. It is significant that the interest in informal dispute resolution is compromised whether the plaintiff induces reliance through misrepresentation of his intention from the outset or, as in the instant case, through failure to disclose a subsequent change of heart.

Second, there are enforcement problems if plaintiffs are permitted to escape the reach of the fraudulent enticement doctrine merely by asserting that they did not form the intent to sue until after they had agreed to negotiate. It is extremely easy for a plaintiff to make such an assertion and extremely difficult to disprove it. This is particularly so where evidence regarding plaintiff's intent might be shielded by the attorney-client privilege.

For these reasons, we think that the rule against fraudulent enticement must be extended to cover cases like the one at bar where the defendant reasonably relies on plaintiff's agreement to discuss settlement and where, later, plaintiff, without notice to defendant, decides to sue. In such circumstances, the duty is on the plaintiff either (1) to communicate to defendant before defendant enters the jurisdiction that prelawsuit negotiations are no longer feasible or that plaintiff has chosen to pursue legal remedies; or (2) to forego service of process on a defendant who is in the jurisdiction for the exclusive purpose of discussing settlement.

Process is quashed, and defendant's motion to dismiss is granted.

---

**3.** The court in *Oliver v. Cruson,* 153 F.Supp. 74 (D.Mont.1957) indicated that such a duty exists. The facts in *Oliver* are similar to the facts in our case except that in *Oliver* the plaintiff expressly invited the defendant into the jurisdiction to negotiate a settlement. As in our case, the plaintiff argued that he did not fraudulently entice the defendant into the jurisdiction since he had not decided to sue until after the invitation issued. In rejecting this argument, the court stated that "[t]he fact that plaintiff may have concluded on the trip to Billings that a conference would be useless is immaterial, since neither that fact nor the fact that plaintiff was starting suit was communicated to defendant prior to arrival in Billings." 153 F.Supp. at 78.