**Guy J. CARRIER and Jacquelyn Carrier, Plaintiffs,**

v.

**Tim JORDAAN and Aventure, Catamarans, Limited, Defendants.**

Civil Action No. CV208–068.

United States District Court, S.D. Georgia, Brunswick Division.

Oct. 17, 2008.

David B. Marvel, Prenner, Marvel, PA, Charleston, SC, for Plaintiffs.

Tim Jordaan, pro se.

### ORDER

LISA G. WOOD, District Judge.

Plaintiffs Guy J. Carrier and Jacquelyn Carrier filed the above-captioned case against Defendants, Tim Jordaan and Aventure Catamarans, Limited (hereinafter "Aventure"), asserting breach of warranty claims and state law tort claims for negligence, strict liability, and fraud.

Presently before the Court is Defendants' motion to quash service of process and to dismiss the Carriers' complaint for insufficient service of process and lack of personal jurisdiction. Because the Court finds that the Carriers have presented enough evidence to allow a reasonable person to conclude that they did not lure Jordaan into Georgia by artifice or fraud, and because Defendants have not met their burden of establishing that service on Jordaan was not sufficient as to Aventure, Defendants' motion to quash and to dismiss will be **DENIED**.

## BACKGROUND

The Carriers, who are both residents of Virginia, purchased a 50–foot Aventure Power Catamaran, from Aventure, a limited liability company incorporated in the Grand Cayman Islands. Complaint at ¶ 5. The sale occurred in Florida on or about May 17, 2007, and was consummated by Jordaan, an agent for Aventure, and a citizen of South Africa. *Id.* at 5–10. The purchase price for the vessel was $485,000. *See* Exhibit C–2 to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Quash and to Dismiss.

On May 21, while the Carriers were traveling from Florida to their home in Virginia, in United States waters off the coast of Georgia, the vessel "began taking on water" and the Carriers had to be rescued by Sea Tow of Brunswick. Complaint at ¶ 12. The vessel was salvaged and transported to Brunswick. *Id.* After an inspection, the Carriers discovered what they believe to be several discrepancies between the condition of the vessel and the description of the vessel given to them by Defendants at the time of purchase. *Id.* at 13. Plaintiffs also discovered what they believe to be defects in the ship's manufacture. *Id.*

On June 6, 2008, the Carriers filed a complaint against Jordaan and Aventure, in which they allege breach of express warranty, breach of the implied warranties of merchantability and fitness for a particular purpose, breach of warranty under the Magnuson–Moss Warranty Act,[1] negligence, negligent infliction of emotional distress, strict liability, fraud and unfair trade practices. *Id.* at 15–53.

Although what happened both before and immediately after the complaint was filed is in dispute and forms the nucleus of the pending motion, the uncontroverted evidence shows that the Carriers and Jordaan began communicating with one another through a series of e-mails beginning on May 23, 2008. *See* Exhibits A–1 through A–13 to Plaintiffs' Memo. In the first e-mail exchanged between the parties, Jordaan writes to the Carriers and states:

> Please do not go to the lawyers for this matter, that costs [sic] could be put to better use. We are arriving to inspect the CEE hatches and will listen to the suggestions, if that is OK with you. The boat is still a great boat, water damage is not a disaster, what is interesting, the boat refuses to sink. All my greetings, Tim [Jordaan].

Exhibit A–1 to Plaintiffs' Memo. In a later e-mail, Jordaan indicates that he would travel from his home in South Africa to Brunswick, Georgia to inspect the ship and assess what damage had occurred. In an e-mail dated May 29, 2008, from Jordaan to Mr. Carrier, Jordaan writes:

> Dear Guy [Carrier], As I have mentioned I will come over, at my own expense, and see what has happened with the emergency hatch covers and what can be done about them, as well as assess the seawater damage incurred, for myself ... Kind Regards Tim.

Exhibit A–5 to Plaintiffs' Memo.

On June 2, 2008, Jordaan sent Mr. Carrier another e-mail, in which he stated that he would be "coming to Brunswick from Thursday until Sunday. Will phone you while we are there. All the best, Tim." Exhibit A–7 to Plaintiffs' Memo. That same day, Mr. Carrier responded through e-mail and stated, "Tim, I am very happy to hear that. I may try and get down there over the weekend if it's possible from my end. Guy." Exhibit A–8 to Plaintiffs' Memo. On June 6, 2008, Mr. Carrier sent Jordaan another e-mail. In this e-mail, which was sent after Jordaan had

---

1. 15 U.S.C. § 2301.

already arrived in Georgia, Mr. Carrier states:

> Tim, I'm afraid I will not be able to get Brunswick, Ga until Sunday morning 6/8/06. Think around 11:00 am[.] We are still looking for our lost dog and I'm sure you understand. Please call me if you wish me to travel to Georgia given this delay, Guy.

Exhibit A–9 to Plaintiffs' Memo. The next day, on June 7, 2008, Jordaan responded to Mr. Carrier's e-mail and stated, "Hi Guy, It is a pity you can not meet with us as we have quite a bit to discuss. We are still here tomorrow but it is up to you to decide if it is worth your while to meet with us. Tim." Exhibit A–10 to Plaintiffs' memo.

Jordaan traveled from South Africa to Brunswick on June 4, 2008. The reason for this trip is in contention. According to Plaintiffs, Jordaan "traveled to Brunswick to survey the vessel." *Id.* According to Defendants, Jordaan came to Georgia on that day "for the sole purpose of meeting with Mr. Carrier at Mr. Carrier's request only for settlement resolution of Plaintiffs' claims." Defendants' Motion at 3. In any event, the Carriers filed their complaint on June 6, 2008, and a copy of the complaint and a summons was served upon Jordaan at his room at the Quinto Motel in Brunswick, Georgia on that same day. *See* Return of Service, Docket Nos. 5 and 6. The e-mail communications between the parties ended on June 7, 2008, when Jordaan sent Mr. Carrier the following e-mail:

> Hi Guy, we have been served papers so it is now the lawyers who will do the talking. So it will be pointless your coming to Brunswick [sic]. A suggestion from the locals, it will be in your best interest to have Sea Tow take the boat to Tiger Point shipyard. Regards, Tim.

Exhibit A–12 to Plaintiffs' Memo.

On July 7, 2008, Defendants filed the instant motion. Defendants assert that the Court should quash service of process and dismiss Plaintiffs' complaint for lack of personal jurisdiction and insufficient service of process under Rules 12(b)(2) and 12(b)(5) of the Federal Rules of Civil Procedure. Defendants' Motion at 1. The basis for their argument is that Jordaan "was induced by artifice and fraud to enter the State of Georgia for the purpose of procuring service of process" and personal jurisdiction. *Id.* at 2. Alternatively, Defendants argue that, even if the Court finds that service on Jordaan was sufficient as to him in his individual capacity, such service was not sufficient as to Aventure, and therefore should be quashed.

In Jordaan's Declaration, which is attached to Defendants' motion, he states that prior to June 4, he had never been to Georgia and had no connections with the State. *See* Declaration of Tim Jordaan In Support of Motion To Dismiss at 7–20. Jordaan goes on to state:

> I have traveled to Georgia on only one occasion for the sole purpose of meeting with Plaintiff at Plaintiff's request only for settlement resolution of Plaintiff's claim. I was mislead and intentionally deceived into traveling thousands of miles from my home and business in South Africa to Georgia to meet with Plaintiff for the sole purpose of meeting to discuss resolution of this matter. Instead of meeting me, Plaintiff Guy Carrier send [sic] a process server to my hotel and attempted to serve me individually and as agent for ACL with Process ... Had Plaintiff Guy Carrier not used artifice and deceit to lure me to Georgia and the United States under false pretense, I would not have been in Georgia at the time of attempted service.

Jordaan Declaration at 18, 19. On the other hand, the Carriers deny that they

"lured" Jordaan into Georgia by trickery, and instead allege that "he appeared in the jurisdiction for his own purposes and under his own volition, and was served by the Plaintiffs with this action by coincidence and for convenience." Plaintiffs' Memo at 4.

Both of Defendants' arguments—that service of process was insufficient, and that the Court lacks personal jurisdiction over Defendants—turn on the same question: Whether Jordaan's presence in the State of Georgia was obtained by deceit or trickery on the part of the Carriers.

## DISCUSSION

### I. *Personal Jurisdiction*

First, Defendants argue that the Carriers' complaint should be dismissed for lack of personal jurisdiction under Rule 12(b)(2). Defendant's Motion at 1. Defendants, in their original motion to dismiss, engage in a detailed discussion of Georgia's long-arm statute and the due process limitations on the Court's exercise of personal jurisdiction. *See* Defendants' Motion at 9–17. However, such issues are not significant in the present case, because Jordaan was served with process while physically present in the State of Georgia.

■■■ When a non-resident is found within the State, Georgia law provides the courts with a basis for personal jurisdiction independent from the long-arm statute. *See* O.C.G.A. § 9–10–33 (2008) ("A person who is not a citizen of this state, passing through or sojourning temporarily in the state, may be subject to an action in any county thereof in which he may be found at the time when the action is brought."). As the Carriers correctly

note, "Defendants' argument ignores the fact that service of process in this matter was not effected by means of the long arm statute, but by process server within the District pursuant to Georgia Code, Section 9–10–33, which explicitly authorizes service upon a nonresident while that nonresident is 'passing through or sojourning temporarily in the state.'" Plaintiffs' Memo at 2. Because Jordaan was served with process while physically present in Georgia, the question of whether personal jurisdiction is appropriate requires an analysis of Georgia Code, Section 9–10–33, and not the Georgia long-arm statute.

■■■ Further, the fact that Jordaan was served with process while located in Georgia not only obviates the necessity of engaging in an analysis of Georgia's long-arm statute, but it also eliminates the need to engage in a detailed analysis of due process concerns. In *Pennoyer v. Neff*, 95 U.S. 714, 722, 24 L.Ed. 565 (1878), the Supreme Court stated that "[t]here can be no serious question that the exercise of personal jurisdiction over one who is personally served within the territorial jurisdiction of a court comports with due process."[2] Because Jordaan was served with process while physically present within the State, the Court concludes that the exercise of personal jurisdiction would comport with due process.

The real issue, then, with respect to whether the Court may assert personal jurisdiction over Defendants, is whether Jordaan's physical presence in the State of Georgia was obtained by Plaintiffs' deceit or trickery. As the Seventh Circuit has stated in *Jacobs/Kahan & Co. v. Marsh*,

**2.** *See also Burnham v. Sup.Ct. of Cal.*, 495 U.S. 604, 619, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) ("The short of the matter is that jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice.' That standard was developed by analogy to 'physical presence,' and it would be perverse to say it could now be turned against that touchstone of jurisdiction.").

"[j]urisdiction over a non-resident defendant may not, of course, be premised on his physical presence where the presence was obtained by plaintiff's trickery or 'luring' designed solely to create a jurisdictional predicate." 740 F.2d 587, 593 n. 7 (7th Cir.1984); *see also Henkel Corp. v. Degremont, S.A.,* 136 F.R.D. 88, 91 (E.D.Pa.1991); *Am.-European Art Assocs. v. Moquay,* No. 93–6793, 1995 WL 317321, at *3–4, 1995 U.S. Dist. LEXIS 7113, at *8–9 (S.D.N.Y. May 23, 1995). As the Supreme Court noted in *Burnham,* most states have statutes or common-law rules exempting non-residents from service of process or personal jurisdiction where they are lured into the jurisdiction by fraud or deceit. *Burnham,* 495 U.S. at 613, 110 S.Ct. 2105. The Court will examine whether the Carriers lured Jordaan into Georgia by deceit or trickery in Section III, *infra.*

## II. *Service of Process*

Next, Defendants argue that the Carriers' complaint should be dismissed for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). Defendants' Motion at 1. Like the issue of personal jurisdiction, the issue of whether service of process was sufficient in this case turns on whether Jordaan's presence in Georgia was secured through trickery or deceit. As Defendants discuss in their motion, "[i]t is well-established law that if a person is induced by artifice, fraud, or trickery to come within a jurisdiction for the purpose of securing service of process, service made on the person while in the jurisdiction is invalid and should be set aside." Defendants' Motion at 5 (citing *Commercial Mut. Accident Co. v. Davis,* 213 U.S. 245, 256, 29 S.Ct. 445, 53 L.Ed. 782 (1909)).

Defendants note that, in the context of service of process, "[s]pecial considerations for the administration of justice exist where a defendant has entered the jurisdiction for settlement talks primarily at the instigation of the plaintiff." Defendants' Motion at 6 (citing *Coyne v. Grupo Indus. Trieme, S.A.,* 105 F.R.D. 627, 629 (D.D.C.1985)). Defendants go on to state that:

> Because of the potential for dispute over whether negotiations or meetings were instituted and carried out in good faith prior to service, several courts have adopted a bright-line rule prohibiting service of process where a plaintiff has induced a defendant to enter the jurisdiction for settlement talks, unless the plaintiff first warns the defendant before he enters the jurisdiction that he may subject himself to service or gives the defendant the opportunity to leave the jurisdiction before service is made if settlement talks fail.

Defendants' Motion at 6–7. Defendants argue that "[t]he bright-line rule 'promotes good faith settlement, is efficient from a judicial standpoint, and serves to distance the courts from the possibility of trickery.'" *Id.* (quoting *K Mart Corp. v. Gen–Star Indus. Co.,* 110 F.R.D. 310, 312 (E.D.Mich.1986)). Further, Defendants cite *Coyne,* where the court stated:

> [C]ourts should avoid, if possible, the unpleasant and often impossible task of judging the inevitable swearing matches about who said what to whom. A rule that requires the plaintiff to make it absolutely clear to the defendant that service may be made if he enters the jurisdiction helps to avoid this waste of judicial resources.

105 F.R.D. at 630.

Although Defendants are correct in noting that several courts throughout the country have adopted this "bright-line" ap-

proach,[3] this rule has never been adopted by this Court or any other court in this Circuit. Even if the Court were to adopt this rule, this case does not present the type of situation in which the rule was meant to apply. Unlike the situations present in the cases adopting the bright-line rule, Jordaan and Aventure have presented no evidence showing that the Carriers scheduled any official "settlement" talks for the purpose of enticing Jordaan to travel to Georgia and be subject to service of process and personal jurisdiction.[4] Because the bright-line rule would not even apply given the facts of this case, the Court need not decide whether it would adopt such a rule if the appropriate case were to present itself.

Having rejected application of the proposed bright-line rule, the Court is left to consider whether Jordaan was lured into Georgia by the Carriers' trickery or deceit. If Jordaan's presence was obtained through such deceitful means, it would be appropriate to dismiss Plaintiffs' complaint for insufficient service of process and lack of personal jurisdiction.

## III. *Plaintiffs' Alleged Fraud and Deceit*

### A. Legal Standard and Burden

In *Familia De Boom v. Arosa Mercantil, S.A.*, the Fifth Circuit held that "when service of process is challenged, the party on whose behalf service is made has the burden of establishing its validity." 629 F.2d 1134, 1139 (5th Cir.1980) (citing 5 Wright & Miller, Federal Practice and Procedure § 1353 (1969)) (*overruled on other grounds* by *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).[5] The court in *Familia* held that the plaintiff has the burden of establishing personal jurisdiction as well. *Id.* at 1138. Since *Familia* was decided, district courts throughout this Circuit have followed this view and have cited *Familia* with approval. In *Thomas v. Belco, Inc.*, No. CV588–197, 1988 U.S. Dist. LEXIS 15542, *5 (S.D.Ga. Dec. 13, 1988), Judge B. Avant Edenfield cited *Familia* with approval and held that the plaintiff carries the "burden of establishing validity of the service of process." *See also Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F.Supp.2d 1354, 1360 (N.D.Ga.2008).

In *Morris v. SSE, Inc.*, the Eleventh Circuit clarified the applicable burden and held that when deciding a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the [defendant]" and that "[a] prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for a

---

**3.** These courts include the Eastern District of Missouri (*The May Dept. Stores Co. v. Wilansky*, 900 F.Supp. 1154 (E.D.Mo.1995)), the Eastern District of Michigan (*Voice Sys. Mktg. Co., L.P. v. Appropriate Tech. Corp.*, 153 F.R.D. 117 (E.D.Mich.1994)); the Eastern District of Pennsylvania (*Henkel Corp. v. Degremont, S.A.*, 136 F.R.D. 88 (E.D.Pa.1991)), the District of Columbia (*Coyne* ), and the District of Montana (*Oliver v. Cruson*, 153 F.Supp. 74 (D.Mont.1957)).

**4.** In contrast, in *Coyne*, the plaintiff admitted that "he repeatedly urged [the defendant] by

telephone to come to Washington to settle their dispute," and, upon the defendant's arrival, served the defendant with process, as was his intention all along. 105 F.R.D. at 628–29.

**5.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

directed verdict." 843 F.2d 489, 492 (11th Cir.1988) The court went on to say that "[t]he district court must construe the allegations in the complaint as true to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Id.* However, as seems to be the case here, "where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the nonmovant plaintiff." *Id.* (citing *Delong v. Washington Mills,* 840 F.2d 843, 845 (11th Cir.1988)). Although the court in *Morris* limited its discussion to motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2), courts have applied precisely the same analysis when dealing with motions to dismiss for insufficient service of process under Rule 12(b)(5). *See, e.g., Lowdon PTY,* 534 F.Supp.2d at 1360; *Bell v. Integrated Health Serv's, Inc.,* No. 06–0356–WS–M, 2007 WL 274364, *2, 2007 U.S. Dist. LEXIS 6728 *6 (S.D.Ala. Jan. 30, 2007). In *Lowdon, PTY,* the court described the applicable burden in detail:

> The burden is on [the plaintiff] to establish the validity of service of process on [the defendant]. In determining whether this burden has been met, the Court applies the same standards of proof governing motions to dismiss for lack of personal jurisdiction. In that context, the defendant first bears the burden of producing affidavits that, in non-conclusory fashion, demonstrate the absence of jurisdiction. The plaintiff then bears the burden of presenting "enough evidence to withstand a motion for directed verdict." If the plaintiff presents countering evidence, "the court must construe all reasonable inference in favor of the plaintiff." Absent an evidentiary hearing, the plaintiff's presentation of sufficient evidence to defeat a motion for directed verdict ends the inquiry favorably for the plaintiff.

*Id.* at 1360 (internal citations omitted).

## B. Plaintiffs Have Satisfied Their Burden

Applying these applicable burdens to the present case, the Court finds that Defendants have carried their initial burden of producing enough evidence to demonstrate, in a non-conclusory fashion, the absence of jurisdiction and the invalidity of service of process. Therefore, the burden shifts to Plaintiffs to present "enough evidence to withstand a motion for directed verdict." *Id.*

In *Walker v. NationsBank of Florida, N.A.,* the Eleventh Circuit held that a directed verdict is only appropriate where "the facts and inferences are so strong and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary verdict." 53 F.3d 1548, 1555 (11th Cir.1995). On the other hand, if evidence is presented "of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions, the motion must be denied." *Id.* Therefore, unless the facts are "so strong and overwhelmingly" in favor of Defendants such that "fair-minded persons" could not disagree, Defendants' motion to dismiss must be denied.

■ Plaintiffs in this case have presented more than enough evidence to satisfy the directed verdict standard and, therefore, defeat Defendants' motion. Construing all reasonable inferences in favor of Plaintiffs, a reasonable person could conclude that the Carriers did not lure Jordaan into Georgia for purposes of obtaining service of process and jurisdiction, but instead simply used their knowledge of his travel plans to serve him with process. In particular, one could reasonably conclude,

after considering the series of e-mails exchanged between the parties, that it was Jordaan himself who decided to travel from his home in South Africa to Georgia, and that he did so in order to inspect the damaged vessel.

For instance, in his very first e-mail to the Carriers, Jordaan asks the Carriers not to involve any attorneys in the matter and informs the Carriers that he will be "arriving to inspect the CEE hatches and will listen to the suggestions." Exhibit A–1 to Plaintiffs' Memo. Less than one week later, without even a suggestion from the Carriers that he travel to Georgia, Jordaan again contacted the Carriers about his plans to travel to Brunswick, this time stating that he would "come over, at [his] own expense, and see what has happened with the emergency hatch covers and what can be done about them, as well as assess the seawater damage incurred." Exhibit A–5 to Plaintiffs' Memo. Just a few days later, Jordaan sent another e-mail to the Carriers, informing them that he would be "coming to Brunswick from Thursday until Sunday" and that he would contact them upon his arrival. Exhibit A–7 to Plaintiffs' Memo. In response to this e-mail, Mr. Carrier expressed his pleasure at Jordaan's travel plans, and informed Jordaan that he "*may* try and get down there over the weekend if it's possible." Exhibit A–8 to Plaintiffs' Memo (emphasis added).

Four days later, after Jordaan had already arrived in Georgia, Mr. Carrier sent another e-mail to Jordaan informing him that he would be delayed in traveling to Georgia due to unforeseen circumstances. Exhibit A–9 to Plaintiffs' Memo. The next day, Jordaan responded to this e-mail and stated: "It is a pity you can not meet with us as we have quite a bit to discuss. We are still here tomorrow but it is up to you to decide if it is worth your while to meet with us." Exhibit A–10 to Plaintiffs' Memo.

Far from Defendants' contention that Jordaan traveled to Georgia "for the sole purpose of meeting with Mr. Carrier at Mr. Carrier's request only for settlement resolution of Plaintiffs' claims," *see* Defendants' Motion at 3, these e-mails could reasonably be construed as indicating that Jordaan traveled to Georgia on his own accord to inspect the damaged vessel.

To be sure, it is possible that Jordaan desired to view the damaged vessel in person in order to prepare for possible settlement negotiations in the future. However, there is absolutely no indication that the Carriers lured him into Georgia through any deceitful means. Instead, all of the evidentiary materials presented, viewed in a light most favorable to Plaintiffs, indicate that Jordaan traveled to Georgia on his own free will and that Plaintiffs did not say or do anything to entice Jordaan to do so. In fact, the Carriers never even committed to meet Jordaan in Georgia, and informed him that they might not be able to make it after Jordaan arrived in the state. A reasonable person might very well construe this evidence to indicate that Jordaan would have traveled to Georgia regardless of whether he expected the Carriers to meet him there.

At most, Plaintiffs simply used their knowledge of Jordaan's travel plans to ensure that they served him with process while he was physically present in the State. This, however, does not amount to the type of behavior that would render service of process and personal jurisdiction invalid. *See Moquay,* 1995 WL 317321 at *4, 1995 U.S. Dist. LEXIS at *10 ("At best, [the defendant] was fraudulently lured into providing Plaintiffs with his [travel] information. While the Court does not condone such deceptive practices,

Plaintiffs' actions are insufficient to invalidate service upon [the defendant] or the Court's exercise of jurisdiction over [the defendant]."). Because Plaintiffs are only required to present enough evidence as would defeat a motion for a directed verdict, they have satisfied their burden in this case.

### IV. *Sufficiency of Service as to Aventure*

 Defendants argue that, even if the Court finds that service of process was sufficient as to Jordaan, it was not sufficient as to Aventure and, therefore, should be quashed. Personal service of process upon a business association such as a limited liability company in Georgia is governed by Georgia Code, Section 9–11–4(e) (2008). Because Aventure is a foreign entity not authorized to transact business in Georgia, that does not do business and does not have a managing or other agent within the state, the controlling Code Section is Georgia Code, Section 9–11–4(e)(7). Under that section, personal service upon a business association can only be accomplished "by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process." *Id.*

Despite giving both parties a sufficient amount of time after oral argument to brief the Court on this issue, neither party has submitted any evidence as to whether Jordaan was authorized to receive service of process on behalf of Aventure. Because Defendants, as the moving party, had the initial burden of "producing affidavits that, in non-conclusory fashion, demonstrate the absence of" sufficient service of process before shifting the burden to Plaintiffs to demonstrate that service was proper, and because Defendants have failed to meet this initial burden, the Court rejects Defendants' argument that service

of process in this case was insufficient as to Aventure. *See Lowdon PTY,* 534 F.Supp.2d at 1360.

### CONCLUSION

In summary, the Court concludes that it has personal jurisdiction over Defendants, and that Plaintiffs' service of process was sufficient as to both Jordaan and Aventure.

For the reasons described above, Defendants' motion to quash service of process and to dismiss plaintiffs' original complaint for insufficient service of process and lack of personal jurisdiction is **DENIED.** Doc. No. 9.